## GEORGE BLAKISTONE vs. THE GERMAN BANK OF BALTIMORE CITY.

*Assignment of Money to Become Due Under a Contract—Acceptance of Assignment by Debtor—Agreement too Vague to Constitute a Contract—Parol Evidence to Affect Written Contract.*

W    a person by whom money is to become payable upon the completion of certain work accepts an order drawn on him by the workman directing payment to be made to an assignee, such person becomes liable to the assignee for the full amount mentioned in the assignment, upon the completion of the work, and he is not entitled to deduct therefrom money afterwards paid by him to the workman, which advance was necessary to enable the latter to complete the contract.

Before making a written contract for the manufacture of certain articles, the workman inquired whether if he asked for something on account, it would be given him. The other party replied that " he would help him." No reference to this matter was made in the written contract. *Held,* that there was no binding contract to make advances and that the above language was too vague and uncertain to confer any legal right on the workman.

Defendant, who had employed a third party to do certain work for a stipulated sum payable on completion, accepted an order on him in absolute terms by which the money, to become due under the contract, was made payable to the plaintiff, after deducting certain advances already made. In an action on the acceptance defendant offered to prove that at the time of making the same he said that it would be necessary to make advances to the workman and plaintiff had replied " I suppose we will have to take care of him." Defendant subsequently made additional advances to the workman, and claimed the right to deduct these from the sum so assigned to the plaintiff. *Held,* that evidence respecting this parol agreement between plaintiff and defendant at the time of the assignment is not admissible (1), because parol evidence of a contemporaneous agreement is not admissible to contradict or modify the terms of a written contract; and (2), because if the parol agreement be regarded as collateral to the written acceptance, it is too vague and uncertain in its terms to authorize the jury to infer that the plaintiff either agreed to make advances to the workman himself, or thereby authorized the defendant to make advances and deduct the same from the amount payable to the plaintiff, according to the terms of the assignment.

Appeal from the Baltimore City Court (PHELPS, J.)    At the trial the defendant offered the following prayers :

*Defendant's 1st Prayer.*—That it is the duty of the jury to determine whether or not the whole of the contract between the defendant and C. L. Gwinn & Co. was embraced in the letter from C. L. Gwinn & Co. to the defendant, making the offer to construct the one hundred fenders, more or less, and the acceptance of said offer by the defendant by the writing set out in the pleading, and if they shall find that the whole of the contract was not embraced in the said two writings, then it will be their further duty to find from all the evidence in the cause what the said contract was.    (Refused).

*Defendant's 2nd Prayer.*—That if the jury shall find that the whole contract between Gwinn & Co. and the defendant was contained in the paper-writing referred to in the defendant's first prayer, and shall further find that the contract between Gwinn & Co. and the defendant did in fact require the defendant to make advances to Gwinn & Co., if required by them, in order to complete the contract, and that the defendant did in fact make the advances mentioned in the evidence, upon the demand of Gwinn & Co., and in furtherance of his contract with them, then their verdict should be for the defendant.    (Refused).

*Defendant's 3rd Prayer.*—That if the jury shall find from the evidence in this cause that the acceptance by the defendant of the assignment in favor of the plaintiff was upon the condition, and so expressed to the plaintiff, that it, the plaintiff, should and would relieve the defendant of the obligation of his contract to make advances to C. L. Gwinn & Co. that might be needed to carry on the work, and shall further find that it afterwards became necessary to make additional advances to said Gwinn & Co. in order to enable them to carry out their contract, and that the plaintiff absolutely refused after being applied to and informed of the necessity thereof to make such advances, then the defendant was at liberty to make such advances for account of the

plaintiff and deduct the same from any moneys to become due Gwinn & Co. under said contract, and their verdict must be for the defendant.    (Refused).

*Defendant's 4th Prayer.*—That even though the jury shall find that the whole of the contract between the defendant and C. L. Gwinn & Co. was contained in the letter and its acceptance as set out in the declaration, yet if they shall further find that after the assignment of the contract to the plaintiff and the acceptance thereof by the defendant, the said Gwinn & Co. became insolvent and utterly unable to fulfill their contract with the defendant, and so notified both the plaintiff and the defendant, and shall further find that the defendant thereupon went to the plaintiff and urged it to make the advances required by Gwinn & Co. to complete the contract, and that the plaintiff refused so to do, then the defendant was at liberty to make the advances so required by Gwinn & Co. to carry out their contract, and if the jury shall further find that the advances were made as set out in the evidence, then their verdict must be for the defendant. (Refused).

*Defendant's 5th Prayer.*—If the jury shall find from the evidence in this cause that the said Gwinn & Co. became insolvent, and thereby unable to complete their contract with the defendant, and shall further find that in order to complete the said contract of Gwinn & Co., the defendant was required to pay the two items mentioned in the evidence, to-wit : To the Washington & Georgetown Ry. Co., $174.59, and the Washington laborers, $117.70, making in all $291.29, then this defendant is entitled to have the said amount (or so much thereof as the jury may find to have been required to complete the contract), deducted from the amount due Gwinn & Co. under the said contract. (Granted).

The Court modified the fifth prayer as offered by inserting the words within brackets.

The cause was argued before McSHERRY, C. J., BRYAN,

FOWLER, BRISCOE, PAGE, ROBERTS and BOYD, JJ. (Jan. 18, 19, 1898).

*William S. Bryan, Jr.,* and *C. Baker Clotworthy* (with whom were *J. Southgate Lemmon* and *Edward N. Rich,* on the brief), for the appellant.

I. *As to excluding the verbal conversation between Gwinn and Blakistone.* In considering the question of the admissibility of the conversation between Blakistone and Gwinn, we are not embarrassed by any question of estoppel. When Schulz loaned the fifteen hundred dollars to Gwinn, he had never seen the written proposition from Gwinn to Blackistone to do the work, and therefore could not have relied upon or been misled by its terms. As soon as he saw Blakistone, about two months after the making of the loan, and at the time Blakistone accepted the order from Gwinn, Schulz was informed fully of the exact nature of the understanding between Gwinn and Blakistone. The general principle is undoubted that where parties reduce their entire contract to writing, parol evidence cannot be introduced to vary or contradict the written terms in which the parties have stated their agreement. It is equally well settled, that where the parties have not attempted to write out the whole contract, but have merely made a written memorandum of some of the terms, the contract may be partly in writing and partly by parol. *Roberts* v. *Bonaparte,* 73 Md. 191; *Allen* v. *Pink,* 4 Mees. & Wels. 140, 144. In this latter case it is always admissible to prove by parol those terms in relation to which the written memorandum is silent. In *Allen* v. *Pink,* just referred to, the defendant gave the plaintiff a verbal warranty of a horse, which the plaintiff thereupon bought and paid for, and the defendant then gave him the following memorandum : " Bought of G. Pink, a horse for the sum of £7 2s. 6d., G. Pink." *Held,* that parol evidence might be given of the warranty. See also *Jeffrey* v. *Walton,* 1 Starkie, 267 ; *Willis* v. *Hulbert,* 117 Mass. 151; *Horner* v. *Horner,* 145 Pa. St. 258 ;

*Paul* v. *Owings,* 32 Md. 402 ; *Walker* v. *Schindle,* 58 Md. 366–7 ; *McCreery* v. *McCreery,* 5 G. & J. 147 ; *Creamer* v. *Stevenson,* 15 Md. 211; *Bank of Brit. N. Am.* v. *Cooper,* 137 U. S. 473 ; *Hurd* v. *Bovce,* 7 N. Y. Sup. 241; *Same case affirmed on appeal,* 134 N. Y. 595 ; *Palmer* v. *Roath,* 86 Mich. 602 ; *Phelps* v. *Whittker,* 37 Mich. 72 ; *Werden* v. *Woodruff,* 38 Mich. 131; *Jervis* v. *Berridge,* L. R. 8 Ch. Appeals, 351.

Now, applying these cases and remembering that, as we have seen, the written memoranda of the contract between Gwinn and Blakistone was entirely silent as to the time and manner of payment, is there any tenable ground for denying the admissibility of the parol agreement as to those terms ? It was suggested in the Court below that the testimony was too vague, general and uncertain, and was therefore inadmissible. But this is clearly not so. If the testimony were so vague as to make it impossible for the jury (whose sole province it is to construe a contract partly in writing and partly in parol, *Columbian Iron Works* v. *Douglas,* 84 Md. 44 ; *Roberts* v. *Bonaparte,* 73 Md. 191), to determine what the contract was, it would not result in the gross absurdity and injustice of declaring what was known to be a part only of the contract to be the whole contract, but would cause the whole contract, both the oral and written parts, to be declared void. *Sibley* v. *Felton,* 15 Mass. 276, 277 ; *Clark on Contracts,* pages 63, 185. The effect of this would be that at the completion of the work and the acceptance of the fenders, Gwinn could only have recovered from Blakistone what the work and materials were worth on a *quantum meruit.* *Orem* v. *Keelty,* 85 Md. 377. And of course the assignee could acquire no greater rights than his assignor had to grant, the assignment obviously not being the transfer of a negotiable instrument.

II. *As to excluding the verbal conversation between Blakistone and Schulz, president of appellee, at the time of the acceptance of the order from Gwinn to pay the money to the German Bank.* The sole consideration for the acceptance

by Blakistone of this order, and the assuming by him of a new obligation to the German Bank, was the oral promise of Schulz that the bank would take Blakistone's place and make the advances to pay the pay-roll required by the original contract. It has never, so far as we know, been doubted that you could prove by parol what was the consideration for a written promise, and that if there was a failure of consideration the promise ceased to be legally binding. Therefore the appellant should have been permitted to submit to the jury what the consideration was for his promise to the bank to pay to it the moneys that might become due to Gwinn, and to show them that he was relieved from the obligation of this promise by the treacherous repudiation by the bank of its undertaking to make the advances. It is always permissible to show by oral testimony that there is no contract. *Harrison* v. *Morton,* 83 Md. 473 ; *Lindley* v. *Lacey,* 112 Eng. Com. Law Rep. 578.

When the German Bank refused to advance the money for the pay-roll it disappointed the sole inducement for Blakistone's acceptance of the order from Gwinn. This authorized Blakistone to rescind any contract made by him when he accepted the order. *Bollman* v. *Burt,* 61 Md. 229 ; *Brantley on Contracts,* 212, 229. When Mr. Blakistone informed Schulz that he (Blakistone) would advance the money to pay the men as he had done before, and would take it out of the amount due Mr. Gwinn, he sufficiently notified the president of the bank of his election to rescind the acceptance. After this was done, the bank, under its assignment, had only such rights as Gwinn & Co. themselves had, and as that firm could not complain of an advance made to them in pursuance of the original contract at their own request, and which was necessary to prevent them from failing to perform their portion of the contract, the bank standing in their shoes, with full notice of what was about to be done and an opportunity to themselves to make the advance, was likewise precluded from objecting.

Again, and apart from all oral proof as to the duty of Blakistone, or of the German Bank to make advances to meet Gwinn & Co.'s pay-roll, as required, that when it became apparent that unless the money to settle the pay-roll was advanced to Gwinn, they would inevitably break their contract, and entail loss upon themselves, Blakistone and all concerned, it became both Blakistone's right and duty to minimize and prevent the loss if possible. *Furstenburg* v. *Fawcett*, 61 Md. 191–2 ; *Warner* v. *Stoddart*, 105 U. S. 230 ; *Lawrence* v. *Porter*, 63 Fed. Rep. 67 ; *Judice* v. *Southern Pac. Co.*, 16 Southern Rep. 817 ; *Taylor* v. *Read*, 4 Paige, 561; *Miller* v. *Mariner's Church*, 7 Me. 51; *Russell* v. *Butterfield*, 21 Wendell, 300 ; *Pullman P. Co.* v. *Reed*, 75 Ill. 132.

*Edwin G. Baetjer*, for the appellee.

I. The testimony offered to prove a verbal agreement " to help Gwinn & Co. with their pay-roll," as an additional term of the original written contract, was properly excluded. The testimony was inadmissible on the three following grounds :  (*a*) The alleged conversation or agreement was a part of the negotiation or colloquium preceding or accompanying the execution of the written contract, and is to be regarded as merged in it, and the written contract includes all the obligations of the parties. *Delameter* v. *Chappell*, 48 Md. 244 ; *Gorsuch* v. *Rutledge*, 70 Md. 272 ; *Bladen* v. *Wells*, 30 Md. 581; *Dance* v. *Dance*, 56 Md. 437 ; *Warren Glass Co.* v. *Keystone Coal Co.*, 65 Md. 550.

(*b*) The alleged verbal contract is too uncertain and vague and was not intended to create and was not capable of creating legal relations.   Giving the contract, however, the construction most liberal and most favorable to the defendant, it could not mean more than that Mr. Blakistone should make to Messrs. Gwinn & Co. "such advances as they with judicious conduct of their business might require, and Mr. Blakistone might with safety make."   How can it be judicially determined that a business has been judici-

ously conducted ? or that advances are required or can be
made with safety ?   All these are matters of opinion, in
which there is room for the greatest difference.   Even if
Gwinn & Co. were solvent, the necessity of an advance
would depend upon the insufficiency of their own resources ;
this would, in turn, depend upon the amount they require
or desire to apply to other expenses or payments on other
contracts ; whether on given occasions they should use all
their available money to pay the pay roll on this contract
or devote it to the pay-roll on other contracts, or retain a
part to meet maturing obligations ; whether or not they
should exhaust their credit in borrowing or purchasing mate-
rial.   The decision of such questions would determine the
amount of available money Gwinn & Co. would have, and
the necessity of advances.   Again, whether a particular ad-
vance could be *safely* made it would be impossible to deter-
mine; since this would depend upon the cost of completing the
work in case of default.   How uncertain this was is evident
from the fact that the parties themselves were uncertain, and
that the final cost was nearly twice the contract price.

All these matters are, however, incapable of exact judicial
determination, and each occasion for an advance would be
the occasion of agreement or controversy which it would be
impossible for a Court to decide.   Such loose, vague and
uncertain stipulations cannot indicate the full or real inten-
tion of the parties and do not constitute or form a contract.
In *Cummer* v. *Butts*, 40 Michigan, 322 at 325, the Court,
in speaking of stipulations of this character, said : The room
for difference of opinion is immense, and the case is one
where the parties have failed to express themselves in terms
capable of being reduced to certainty by judicial effort ; as
employed the expressions have no frontier of meaning which
can be defined."   See also *Thomson v. Gortner*, 73 Md.
482 ; *Buckmasher* v. *Consumers' Ice Co.*, 5 Daly, 317 ; *De-
lashmut* v. *Thomas*, 45 Md. 143 ; *Gutberg* v. *Lynn*, 2 B. &
Ad. 232 ; *Sherman* v. *Kitzmiller*, 17 S. & R., 45 at 47; 48 ;
*Anson on Contracts*, 5 ; *Pollock on Contracts*, 1, 43.

It has been suggested by the defendant that the real meaning and terms of the contract are that Mr. Blakistone shall advance to Gwinn & Co. from time to time such part of the pay-roll as he (Blakistone) may in *his judgment determine* to be necessary for them and safe for him, and that upon the exercise by Blakistone of his judgment the amounts and times of payment became certain.    Assuming that this is the real meaning of the stipulation, it still does not form a contract, unless they give rise to a legal obligation.    A legal obligation must relate to definite acts of forbearances ; it must give to the promisee a right to control with reference to the subject-matter of the agreement the conduct of the obligor or promisor ; where no obligation exists the rule and guide of conduct is (subject to law) a man's own judgment ; a real obligation substitutes another rule of conduct, to-wit, the terms of the obligation ; if, in fact, as the result of an agreement, the promisor's own judgment is still the rule of conduct or action, unaffected by the agreement, no obligation has been created and no contract made.    To call such an agreement a contract is simply a misuse of terms.    Agreements or promises which, in fact, reserve an unlimited option to the promisor, are illusory and cannot be regarded as contracts.    *Pollock on Torts*, page 44 ; *Anson on Contracts*, 1, 6 ; 3 *Amer. and Eng. Enc.* 842.    Illustrations—A contract to pay what the promisor may deem right.    *Taylor* v. *Brewer*, 1 M. & S. 290.    Or " such compensation as you may deem me deserving of and your means afford."    *Roberts* v. *Smith*, 4 H. & N. 315.    " To pay at my convenience."    *Bawker* v. *Cushing*, 4 Metcalf, 230.    To pay " whenever in my opinion my circumstances will enable."    *Nelson* v. *Van Born*, 29 Pa. St. 352.    It is submitted, therefore, that the alleged agreement, even if admissible, is too vague and uncertain to create an obligation or affect the written contract.

(*c*) Even if the alleged verbal stipulation is read into the original contract, it is immaterial ; the effect would only be to fix the time and conditions for the payment of the money

to become due thereunder ; and all money earned under said contract, no matter when payable, passed under the assignment to the plaintiff. The effect of the verbal agreement as made would be no different than if it had definitely fixed the day for each payment and the amount thereof. It would still be a contract for the payment of money and for payment to Gwinn & Co. ; no matter when it became due it would become due *under* the contract and *to* Gwinn & Co.; and it would pass under the assignment.

II. The testimony offered to modify the acceptance of the defendant Blakistone was properly excluded. The defendant contends that this testimony should be admitted on two grounds : (*a*) To qualify the terms of the acceptance so as to make it provide for the deduction not only of the $925 mentioned in the agreement, but also "*all other sums thereafter advanced.*" This is such a direct and complete alteration of the written agreement, that it needs no discussion to show that it is inadmissible. Such acceptances are within the rule prohibiting the alteration of written instruments by parol. *Hunting* v. *Emmart*, 55 Md. 265 ; *Danl. on Neg. Inst.*, 517.

The defendant further contends : (*b*) That the testimony mentioned proves an agreement by Mr. Schulz to " carry Gwinn " or to assume Blakistone's obligation to make advances that this is a valid collateral agreement. It is to be noted that this is merely an attempt by change of words to avoid the effect of the rule above mentioned. Mr. Schulz, however, never made or assented to the alleged agreement. His words were : " I suppose we will have to do it; we have always helped Gwinn & Co." Such language does not create a legal obligation. *Anson on Contracts*, 11. Moreover, the plaintiff's alleged agreement was to assume Mr. Blakistone's obligation to make advances. We have already attempted to show that Mr. Blakistone was under no real obligation, the agreement being too vague and uncertain. As Mr. Blakistone's alleged obligation was too vague to be a legal obligation it did not become more cer-

tain or binding on the plaintiff when it assumed it than it had been on Mr. Blakistone before.    The mere assumption by the plaintiff of Blakistone's invalid obligation could not change its character or render it enforceable.

III.  The advances made after the date of the acceptance cannot be deducted on the theory that they were made to diminish the loss.

The advances made by Blakistone are to be treated as mere loans which he is not entitled to deduct from the contract price.    *Fox* v. *N. Y. Wood Co.*, 13 Daly, 155 ; 17 *Am. and Eng. Ency.*, 230.    Particular attention is called to this case, the facts being almost identical with the case at bar.

The rule invoked has a much narrower scope than the defendants contend for.    The rule correctly stated is as follows :  " If a party by his negligence or willfulness allows damages to be enhanced the increased loss which was avoidable by the performance of his duty falls on him."    *Sutherland on Measure of Damages*, sec. 88 ; *Borden* v. *Mining Co.*, 17 Md. 420 ; *Benson* v. *Atwood*, 13 Md. 54 ; *Lawson* v. *Price*, 45 Md. 136 ; *Hammil* v. *Faute*, 51 Md. 428 ; *Furstenburg* v. *Fawcett*, 61 Md. 192 ; *Balto. Baseball Co.* v. *Pickett*, 78 Md. 375.    The rule mentioned imposes a duty, it does not leave the taking of steps to prevent loss to the option of the injured party ; it makes it his duty to do so.    He has no right to take any steps which it is not his duty to take.    Whether Mr. Blakistone therefore had the right to make the advances in question depends whether or not it was his duty to do so.    Can it be contended even for a moment that a party to a contract is bound to *advance money* to an *insolvent* contractor to enable him to complete his contract ?   Would not Mr. Blackistone's damages, in the event of a breach of the contract have been the cost of completing the work ?   Would his refusal to advance Gwinn & Co. money to complete the work in any manner affect the measure of damages ?   These questions can only be answered in one way.    Since Mr. Blakistone was not bound to make the advances he had no right to make them

and deduct them on the ground contended for. The rule invoked does not, therefore, justify the advances in question.

PAGE, J., delivered the opinion of the Court.

This suit was brought by the appellee, to recover on an alleged acceptance of the appellant, of an order on the latter from Gwinn & Co. for the payment of whatever should become due on a contract between that firm and the appellant, for the manufacture of certain car-fenders. The contract referred to was created by two letters ; one dated the twelfth day of February from Gwinn & Co. to the appellant, in the words following : " We will be pleased to furnish you with one hundred, more or less, complete fenders, equipments for the Washington and Georgetown Railway Company, for twenty-five dollars net per car. This will include two wheel-guards and one automatic projecting fender for each car, also equipping cars with the same ; " the other, dated the next day, from Blakistone, " Your proposition for the manufacture of 100 fenders for the Washington and Georgetown Railway Company, dated Febry. 12th, 1895, is hereby accepted."

On the 29th March, 1895, Gwinn & Co. gave to the appellee an order on the appellant " for all moneys which may become due under the above contract, after deducting five hundred dollars already paid on account thereof." This order was not presented to the appellant for acceptance until the twenty-second day of May following, when Blakistone accepted in writing, in the terms following : " The within order is hereby accepted, less amount already advanced at this date, about nine hundred and twenty-five dollars."

The appellant now claims the right to a credit for other sums paid by him to Gwinn & Co. after the date of the acceptance, but admits a liability of four hundred and fifty dollars and twenty-four cents, which he has paid into Court. This right, it is contended, arises from the fact, that by reason

of a verbal agreement between the appellant and Gwinn & Co., he was bound to make advances of money to Gwinn. & Co. to enable them to complete the work on the fenders ; that at the time of his making the acceptance the appellee was informed of this agreement, and verbally promised, that if the appellant would accept the order, in consideration thereof, it would make such advances to Gwinn & Co. as. were required of the appellant ; and that the appellee having failed to perform its part of the agreement, the appellant was at liberty to make the advances, and deduct the amount of them, from whatever might become due on account of the acceptance.

All evidence was admitted subject to exceptions, and at. its conclusion the appellee moved the Court to strike out and exclude from the jury, first, all testimony offered, to prove that such verbal agreement was made between the parties hereto, and secondly, all testimony offered to prove the verbal agreement between the appellant and Gwinn & Co.  Both of these motions were granted by the Court, and the propriety of so doing presents the first question to be now considered.

Was the evidence offered to establish the alleged verbal agreement between the appellant and Gwinn & Co., proper to go to the jury ?  It appears from the evidence, that the appellant had received from the Washington & Georgetown Railway Company a proposition to equip their cars with the fenders, of which he was the patentee, at a cost of $35 per car. The appellant testifies, that not knowing what the cost of fenders would be, if built elsewhere than in his own shops, " he sent for Mr. Gwinn of C. L. Gwinn & Co., whom he knew was desirous of making them, and told him   *   * to look over the cars of the railroad company and make up his mind for what price he could put the fenders complete on the cars in Washington ;" later on, Gwinn returned, and said he could do the work for twenty-five dollars per car. The appellant said, he thought the price too low, that they could not be made for that sum.  Gwinn then stated he

" was better equipped for making fenders and could make a profit at that price." The appellant then " told Gwinn, that another matter to be considered " was, had he " the facilities and money to carry on the contract ;" to which. Gwinn replied, that he had, " the only thing I ask of you is that when I ask you from time to time to give me something on account to help out my pay-roll, you will do it." The appellant said " he would help him, that he had no objection to giving him a little money as the work progressed to meet current expenses ; that he also told him to put the offer in writing, which was done as set out." This is a brief summary of that portion of the testimony, that most strongly supports the contentions of the appellant. We have stated it at large, because we think it will enable us to arrive at the true meaning of the parties. The appellant was looking about for a machinist to manufacture the fenders ; he sends. for Gwinn to get an estimate of the cost from him and if practicable to employ him. When the price is given him,. he seeks to be satisfied that they can be made for the sum mentioned, as his own " price " with the railway company " must depend upon the price set by Gwinn." Being assured on this point, another matter concerns him ; has. Gwinn " the facilities and money to carry on the contract." Gwinn tells him he has, but may have to ask him from time for " something " to help out his pay-roll. This possible. obstacle having been thus removed, he tells Gwinn to put his. offer in writing, which is accordingly done in the letter already quoted. From this brief analysis of the proof, it must be apparent, that there is no indication of an intention on the part of either the appellant or the appellee, to enter into a contract with respect to advances. That something was said about advances is true, but they are referred to only as connected with the financial ability of Gwinn & Co. about which the appellant desired to be satisfied, before he entered into contractual relations with them. But apart from this, the terms of the alleged agreement are too vague and uncertain to give rise to a legal obligation. The words are " the only

thing I ask you is that when I ask you from time to time to give me something on account to help out my pay-roll, you will do it," and the appellant replies " he would help him." Now construing this alleged agreement in the most favorable way for the appellant, it leaves to the appellant the absolute right to determine the amounts of the advances and the necessity and times when they are to be made. Such a contract is too vague and uncertain to confer any rights whatever upon Gwinn & Co., enforceable either in law or equity. *Thomson* v. *Gortner*, 73 Md. 482 ; *Taylor* v. *Brewer*, 1 M. & S. 290 ; *Roberts* v. *Smith*, 4 Hurl. & N. 315 ; *American and English Enc. of Law*, vol. 3, 842. For these reasons, we are of opinion there was no evidence sufficient to enable the jury to find a verbal agreement between the appellant and Gwinn & Co., which bound the former to make advances to the latter, during the progress of the work on the fenders, and the Court committed no error in excluding the testimony offered to prove it.

It may be remarked here, that the defendant's first, second and third prayers, which were rejected by the Court below, are all based upon the theory, that there was evidence before the jury from which they could find that the contract between Gwinn and Company and the appellant required the latter to make advances to the former to complete the contract. In view of what has already been said it follows that the assumption of such a theory cannot be maintained. All of these prayers were therefore properly refused.

The proof also shows, that the consideration passing from the appellee to Gwinn & Co. for the order on the appellant was a loan on $1,500, made about the time the order bears date. At the time of its presentation to the appellant for acceptance, it is contended, an agreement was entered into between the appellant and the appellee the effect of which was to bind the appellee, in consideration of the acceptance, to make advances to Gwinn & Co. to enable them to complete their contract. This contention rests entirely upon the evidence of the appellant, and we will give what he

states, in his own language.    He testifies that Mr. Schultz
(the president of the appellee), came to his office on the
22nd of May, and presented the order.    The appellant after
stating he had given Gwinn and Company a considerable
amount of money since the date of the order, further said,
"Mr. Schultz, I have no objection to protecting your bank
to the extent of whatever is due Mr. Gwinn under this con-
tract whenever the money is to be paid, but if I accept this
order, Mr. Gwinn having been steadily calling on me for
money, unless you or somebody is going to take care of
him, he will never complete this order, for he has only three
or four cars completed in Washington."    He said, " Well,
I suppose somebody will have to take care of him, I sup-
pose we will have to do it, we have always helped Mr.
Gwinn, and I suppose we will have to take care of him."    I
said, " If you take care of him, then I have no objection to
undertaking to pay you what is due him, when the contract
is completed."    I sat down to write it (the acceptance)
myself and his exact language to me, was, " Have you any
objection to putting in the amount you have advanced up
to this time ;" I said, " No, and I wrote at the bottom,
'About $925   *   *   *'   Mr. Schultz left there with that
acceptance."    On motion, this evidence was excluded by
the Court from the consideration of the jury.

The general principle is familiar, that parol evidence is
not admissible to qualify the terms of a written instrument ;
it being conclusively presumed, " that such writing expresses
the entire contract, and all evidence of previous colloquium
or understanding must be excluded."    *Delamater* v. *Chap-
pell*, 48 Md. 244.    It therefore cannot be successfully con-
tended (nor has it been in this case), that this evidence is
admissible for the purpose of establishing a co-temporaneous
agreement under which the appellant was to pay the ap-
pellee another or different amount than that called for by
the order and its acceptance.    Ought it to have been ad-
mitted to establish a parol agreement independent of, collat-
eral to and distinct from the written acceptance ?    If the

evidence would warrant the finding of such an agreement it ought to have gone to the jury to enable them to determine what the contract was.   *Roberts & Co.* v. *Bonaparte*, 73 Md. 198.   But the question is, is this evidence of such a .character?   Could the jury, if they had been in possession of it, have reasonably and legally found that the acceptance was signed by the appellant, by reason of a valid legal promise on the part of the appellee, to make the advances ? It is clear, unless the evidence is such as will warrant such .a conclusion, it should not have been admitted ; and in that .event the whole case would rest upon a proper construction .of the terms of the acceptance.   Now it must be borne in mind that on the 22nd of May, the situation was such that -both the appellant and appellee were deeply interested in the ability of Gwinn & Co. to complete their contract with respect to the fenders.   The appellant had agreed to furnish the railway company with one hundred fenders at thirty dollars per car, and Gwinn & Co. had undertaken to manufacture them at twenty-five dollars per car.   The appellant had already advanced to the extent of $925, though he was .under no legal obligation to do so, in order to assist Gwinn & Co. in the completion of their work.   On the other hand, the appellee had loaned them fifteen hundred dollars, and to secure the re-payment of this sum, had taken an order for such sum as might become due under their contract with Blakistone.   If Gwinn & Co. failed to complete their work the appellant would suffer, if not lose, on his contract with the railway company ; and since nothing would then be due to Gwinn & Co. from the appellant, the order and the acceptance thereon would become valueless.   In the light of these circumstances, it cannot be successfully maintained that the conversation already stated, in which the parties seem to have done nothing more than recognize and refer to the situation as it actually existed, can amount to a solemn engagement, or was intended to have the force and effect of varying, if not annulling the terms of the written acceptance.   It may be true, that the appellant supposed

the appellee, under all the circumstances, would make advances to Gwinn & Co., indeed, he testified to that effect; but notwithstanding his belief, there is not enough in the conversation to amount to a contract, or to justify a jury in finding that Mr. Shultz bound the appellee to make the advances.    In fact there is no promise, express or implied, to that effect.    The appellant did not require such a promise as a condition precedent to his signing the acceptance, but seems to be satisfied with the declaration that somebody will have to take care of Gwinn, and "he supposed they would have to do it."    *Anson on Contracts*, page 22. But even if this were otherwise, the loose terms employed by the parties are not sufficient to constitute a valid contract.    To "take care of Gwinn," even though the words be limited in their application to the completion of the fenders, is exceedingly indefinite.    Do they mean that the appellee is to loan him money? if so, to what extent? or under what circumstances?    Who is to determine these questions upon which the obligation of the appellee must be made to depend?    A Court should not allow loose expressions, such as this, to go to the jury for the purpose of raising obligations and rights between parties.    *Thomson* v. *Gortner*, 73 Md. 475; *Delashmutt* v. *Thomas*, 45 Md. 140; *Recknagle* v. *Schmalz*, 33 N. W. (Iowa) 365; *Taylor* v. *Brewer*, 1 Maule & S. 290; *Roberts* v. *Smith*, 4 Hurl. & N. 315.

In the last case cited the plaintiff agreed to accept the appointment of secretary at a salary of £300, " if the company be completely registered and put into operation; if not, I shall be satisfied with any renumeration for my time and labor you may think me deserving of and your means can afford."    The defendant replied, " it is distinctly agreed, * * if the company be not formed that part of your letter which alludes to your salary be null and void, and that at the expiration of three months it is entirely left to me to give you such sum of money as I may deem right as compensation * * in the event of the company not being

carried out." The plaintiff rendered service but the company was not formed. It was held, there was "a liability in honor and not a liability by contract." In *Guthing* v. *Lynn*, 2 B. & A. 234, where the alleged contract was, that if the "horse proved lucky" the plaintiff should give five pounds more, LORD FREEBERDREN said, these words were "too loose and vague to be considered in a Court of law," * * that they amounted "merely to one of those honorary engagements which seem very much to prevail among persons in this way of business." So in *Sherman et al.* v. *Ketsmiler et al.*, 17 S. & R. 47, the Court said, "if a promise is so vague in its terms as to be incapable of being understood or of being carried into effect, it cannot be enforced."

It follows from what has been said, there was no error in rejecting the evidence.

The defendant's fourth prayer is based on the theory that the appellant was at liberty to make the required advances to Gwinn to carry out their contract, provided they were made after Gwinn & Co. became insolvent and unable to complete the contract, and after the refusal of the appellee. We have already said, if the appellee did not bind itself by a valid contract to make advances to Gwinn & Co. its right as against Blakistone depended alone on a proper construction of the terms of the order and its acceptance. We have held that Blakistone was under no legal obligation to "carry Gwinn & Co.," and even if this were otherwise, there was no undertaking on the part of the appellee to take his place in that respect. In view of this, the well established doctrine that imposes upon a party the duty in certain situations of minimizing loss, has no application whatever. The appellee had a right to stand upon the terms of the order and acceptance. The granting of the plaintiff's first prayer and the rejection of the defendant's fourth was therefore proper. We do not find error in the modification made in the defendant's fifth prayer. The judgment must be affirmed.

*Judgment affirmed with costs.*

(Decided March 3rd, 1898).