WILKES *v.* STACY.

Opinion delivered June 29, 1914.

1. CONTRACTS—COMMERCIAL TERMS—EXPLANATION.—While words in a contract relating to the ordinary transactions of life are to be construed according to their plain, ordinary and popular meaning, yet if, in reference to the subject-matter of the contract, particular words and expressions have by usage acquired a meaning different from their plain, ordinary and popular meaning, the parties using those words in such a contract must be taken to have used them in their peculiar sense; so words, technical or ambiguous on their face, or foreign or peculiar to the sciences or arts, or to particular trades, professions, occupations or localities, may be explained, where they are employed in written instruments, by parol evidence of usage.   (Page 560.)

2. CONTRACTS—BREACH—CONSIDERATION — COMMERCIAL TERM — SUFFICIENCY OF COMPLAINT.—A complaint in a suit for damages for breach of a contract to let defendant have plaintiff's "entire furnishing trade" for a certain period, *held* to state a cause of action, as the commercial term might be explained by oral proof.   (Page 561.)

3. CONTRACTS—BREACH—PROFITS—RECOVERY.—There may be a recovery of profits lost by reason of the breach of a contract to let defendant have plaintiff's "entire furnishing trade" for a certain period.   (Page 562.)

4. CONTRACTS—MUTUALITY.—W. purchased the interest of S. in a business in which they were both interested, for a certain sum, W. agreeing to give S. a monthly sum for a year for service rendered, and S. agreeing to give to W. his entire furnishing trade for one year. *Held*, the contract was not void for lack of mutuality. (Page 563.)

5. EVIDENCE—PAROL EVIDENCE TO EXPLAIN COMMERCIAL TERM.—The rules of evidence permit the introduction of parol testimony to explain trade or commercial terms, or terms which have a fixed meaning, when used in a written contract.   (Page 563.)

Appeal from Woodruff Circuit Court, Northern District; *J. M. Jackson,* Judge; reversed.

STATEMENT BY THE COURT.

Appellant sued to recover damages under the following complaint:

"That the defendant, C. R. Stacy, and Charles N. Wilkes were engaged in the general merchandise business, under the firm name of Wilkes & Stacy, during the year 1911; that on the 29th of October the defendant sold to this plaintiff his entire interest in said store, this plaintiff thereby succeeding to said business of Wilkes & Stacy, for the sum of $3,640 (which was paid to the defendant), and the further consideration of an allowance of $75 per month to the defendant for the year 1911 for salary, and as a further consideration to this plaintiff for the payment of said sum of money, defendant agreed to furnish this plaintiff with his entire furnishing trade for the year 1912. It was agreed that said "furnishing trade" mentioned in the memoranda was to consist of goods and merchandise to be furnished the hands and tenants of the defendant for the year 1912, the payment of which he, defendant, obligated himself and promised to pay; said credit being extended solely to defendant.

"A memorandum of said contract and agreement was reduced to writing and in duplicate, and a copy of said memorandum is attached hereto, marked exhibit 'A,' and made a part hereof. That at the time said contract was made it was agreed between the plaintiff and the defendant that the 'furnishing trade' in the contract was to consist of the necessary articles, goods and merchandise to be furnished the tenants and employees of the defendant for the purpose of maintenance during the year 1912. That said furnishing was to be of the goods, merchandise and articles handled and sold by this plaintiff. Plaintiff states that in compliance with his agreement he bought and purchased the necessary goods and merchandise and articles to comply with said agreement, at a cost of $5,000, and stood ready at all times during the said year 1912 to furnish and deliver the same. Plaintiff further states that in violation of said contract and

agreement the said C. R. Stacy failed and refused to deliver his 'furnishing trade' as agreed upon with this plaintiff for the year 1912, and directed and delivered it to the E. H. Conner Mercantile Company, a firm doing a competitive and similar business to this plaintiff in the town of Augusta. That during said year of 1912, the said C. R. Stacy delivered to the said E. H. Conner Mercantile Company the accounts of his said hands, for which he became liable, which he agreed and contracted to place with this plaintiff, to the amount of $2,516. That under said contract and agreement, he agreed to buy goods from this plaintiff, the gross amount of which was $2,516; that the contemplated profits on said 'furnishing trade' was the consideration for which plaintiff made the contract herein mentioned.

"That said profits amounted to the sum of $960; that by reason of defendant's failure to furnish said 'trade' as agreed upon, this plaintiff is damaged and injured in the sum of $960, this being the net profit to this plaintiff on said goods and furnishings which were furnished to defendant's hands and tenants on account and credit of defendant, contemplated by the contract herein, for the year 1912.

"Premises considered, plaintiff prays that he have and recover of and from the defendant the sum of $960 and all costs in this suit expended."

The exhibit mentioned in the complaint, as being attached to it, was as follows:

"Agreement issued in duplicate form between C. R. Stacy and T. D. Wilkes.

"I, Conner Stacy, agree to take the amount of money I paid in the store of T. D. Wilkes & Bro., $3,640.33 (three thousand six hundred and forty and 33/100 dollars), and a salary of $75 per month for the year 1911 for services rendered and to be rendered, for my entire interest in said store now owned by Wilkes & Stacy. C. R. Stacy agrees to let T. D. Wilkes, or his agents, have his entire furnishing trade for the year 1912. T. D.

Wilkes agrees to allow the said C. R. Stacy 10 per cent discount on goods furnished the said C. R. Stacy's hands at the end of season 1912.

(Signed)　　　　　　　　　　　"C. R. Stacy.

　　　　　　　　　　　　　　　　"T. D. Wilkes.

"Witness:　C. N. Wilkes."

A demurrer was sustained to this complaint, and this appeal has been duly prosecuted from the order of the court dismissing the cause of action.

*Harry M. Woods,* for appellant.

1. The damages alleged in the complaint were not speculative, or indeterminable, but the allegations are specific and accurate, and the profits claimed are certain and probable. This case falls within the rule stated by this court in *S. W. Tel. & Tel. Co.* v. *Memphis Tel. Co.,* 111 Ark. 474; see also 13 Cyc. 51-54; 69 Ark. 219; 78 Ark. 336; 80 Ark. 228; 91 Ark. 427; 95 Ark. 363; 97 Ark. 135; 103 Ark. 584.

2. It may be conceded that the term "furnishing trade" used in the contract is indefinite, yet the complaint alleged specifically the meaning and use of the term, and parol evidence was admissible to show its particular meaning among business men in the section of the country in which it is used. Lawson on Contracts (1893), § 383; 106 Ark. 409, and cases cited; 9 Cyc. 578, 582, 587 and 772; 85 Ark. 576.

*S. Brundidge,* for appellee.

1. Appellant, in his complaint, attempted to change and vary the terms of the written contract. He can not change or vary the terms of the contract by parol. 94 Ark. 130; 105 Ark. 50; 54 Ark. 423; 100 U. S. 686-692.

2. The profits alleged in the complaint, for the loss of which appellant seeks to recover, are too speculative and remote. Cases cited by appellant; 106 Ark. 400-410.

SMITH, J., (after stating the facts). The allegations of the complaint appear to be more specific and definite than those contained in the exhibit. The complaint alleges the meaning of the term "furnishing trade" as used

in the exhibit. The meaning of trade terms may be shown. The rule in such cases is stated in Lawson on Contracts, (2 ed.), § 390, p. 450.

"The customs of particular classes of men soon give to particular words different meanings from those which they may have among other classes, or in the community generally. Mercantile contracts are commonly framed in a language peculiar to merchants, and hardly understood outside their world. Agreements which are entered into every day in the year between members of different trades and professions are expressed in technical and uncommon terms. The intentions of the parties, though perfectly well known to themselves, would be defeated were the language employed to be strictly construed according to its ordinary meaning in the world at large. Hence, while words in a contract relating to the ordinary transactions of life are to be construed according to their plain, ordinary and popular meaning, yet if, in reference to the subject-matter of the contract, particular words and expressions have by usage acquired a meaning different from their plain, ordinary and popular meaning, the parties using those words in such a contract must be taken to have used them in their peculiar sense. And so words, technical or ambiguous on their face, or foreign or peculiar to the sciences or the arts, or to particular trades, professions, occupations, or localities, may be explained, where they are employed in written instruments, by parol evidence of usage."

This question was recently thoroughly considered by this court in the case of *Paepcke-Leicht Lbr. Co.* v. *Talley,* 106 Ark. 400, in which case it was said: "Ordinarily, it is the duty of the court, in the trial of cases, to construe a written contract and declare its terms and meaning to the jury. But where the contract contains words of latent ambiguity, or where technical terms are used or terms which, by custom and usage, are used in a sense other than the ordinary meaning of the words, oral testimony is admissible to explain the meaning of the terms or words used, and the question may be submitted

to the jury to determine in what sense they are used."
And the same opinion quotes from *Wood* v. *Kelsey*, 90
Ark. 272, the following language: "Courts may acquaint
themselves with the persons and circumstances that are
the subject of the statements in the written agreement,
and are entitled to place themselves in the same situation
as the parties who made the contract, so as to view the
circumstances as they viewed them, and so as to judge
of the meaning of the words and of the correct applica-
tion of the language to the things described."

It is urged by appellee that appellant undertook in
his complaint to enlarge and vary the terms of the con-
tract for the sale of the stock of goods. But the exhibit
is merely evidentiary of the terms of the sale, and the
sufficiency of the complaint is to be determined by a con-
sideration of its allegations. We need not consider any
possible difficulty which appellant may experience in
proving the allegations of his complaint, as no such diffi-
culties are before us, when the sufficiency of the com-
plaint is tested on demurrer. We think the allegations
of the complaint are sufficiently definite and certain to
state a cause of action. It is urged that the complaint
does not state what articles appellee would desire fur-
nished to his tenants during the year 1912 and that the
complaint does not state the quantity of such articles.
But it can not be assumed that appellee did not know
what articles he would wish to purchase from appellee,
nor can we assume that appellee did not have these arti-
cles for sale, as appellant had just purchased the stock
of goods from appellee and this purchase constituted the
consideration for the contract alleged to have been
broken. In addition to the goods just purchased from
appellee, appellant alleged that he bought additional
goods and merchandise and articles to comply with said
agreement at a cost of $5,000, and stood ready at all
times during the year 1912 to furnish the merchandise
embraced in the terms of the contract. Nor was there
such uncertainty as to quantity as would render the con-
tract void on that account. The contract as alleged in

the complaint, was that appellee should purchase all of the goods from appellant, which appellee desired furnished to his tenants during the year 1912, and the exact quantity of such goods is alleged to be $2,516; but they were purchased by appellee from another mercantile concern doing a similar business.

There is almost an infinite number of cases on the question of the recovery of profits by way of damages for breach of a contract; and this question has been the subject of a number of recent cases decided by this court. The rule in such cases, as stated by Mr. Justice RIDDICK, in the case of *Beekman Lumber Co.* v. *Kittrell,* 80 Ark. 228, was quoted from 13 Cyc. 53, as follows: "The recovery of profits, as in the case of damages for the breach of contracts, in general depends upon whether such profits were within the contemplation of the parties at the time the contract was made. If the profits are such as grow out of the contract itself, and are the direct and immediate result of its fulfillment, they form a proper item of damages." Such damages "must be certain both in their nature and in respect to the cause from which they proceed. It is against the policy of the law to allow profits as damages where such profits are remotely connected with the breach of contract alleged, or where they are speculative, resting only upon conjectural evidence or the individual opinion of parties or witnesses." The majority of the court think the facts alleged in the complaint meet the requirements of this test.

Appellee agreed to purchase from appellant all the supplies which it would be necessary to furnish appellee's tenants during the year 1912, whether this amount was much or little, but the allegations of the complaint show it to be an exact amount and the books of account which would have been kept would have shown the various articles bought, upon which, by calculation, the profits could have been ascertained. While these calculations might have proven intricate, that fact would not have prevented a recovery, if the proof of them was sufficient for such calculations to be made, and the allega-

tions of the complaint are that such was the case with reference to this transaction.

It is said that this contract is void for want of mutuality; but we do not think so. Appellee paid a fixed sum of money and agreed to give appellant employment for a definite time and to allow him a certain per cent of the profits. In consideration for this appellee agreed to purchase from appellant the supplies, which he would require for his tenants, and, whether that amount was much or little, it included all the supplies so to be purchased. This agreement necessarily implied that the goods should be sold at the usual and customary prices; just as such an agreement is implied in any case where goods are purchased without any definite understanding as to price.

The question of mutuality of contract was considered in the case of *Thomas-Huycke-Martin Co.* v. *Gray,* 94 Ark. 9, the syllabus in which case reads as follows: "A contract whereby defendant at a price fixed undertook to buy the output of a sawmill is not lacking in mutuality as not binding the plaintiffs to sell, since the contract implies a corresponding obligation on the part of the plaintiffs to sell at the stipulated price." And the same case quoted with approval from *Lewis* v. *Atlas Mut. Life Ins. Co.,* 61 Mo. 534, the following language: "It very frequently happens that contracts on their face, and by their express terms appear to be obligatory on one party only; but in such cases, if it be manifest that it was the intention of the parties, and the consideration upon which one party assumed an express obligation, that there should be a corresponding and correlative obligation on the other party, such corresponding and correlative obligation will be implied. As, if the act to be done by the party binding himself can only be done upon a corresponding act being done or allowed by the other party, an obligation by the latter to do or allow to be done the act or things necessary for the completion of the contract will necessarily be implied." See also *El Dorado Ice Co.* v. *Kinard,* 96 Ark. 184.

The judgment of the court below will therefore be reversed and the cause remanded, with directions to overrule the demurrer.

McCULLOCH, C. J., and HART, J., (dissenting). The parties themselves, in presenting the case here, have treated the allegations of the complaint as being no broader than the language of the contract itself, except that the complaint undertakes to define what is meant by the term "furnishing trade."

There can be no doubt that the rules of evidence permit the introduction of parol testimony to explain trade or commercial terms or terms which have a fixed meaning. That, however, is not the real question in this case, for, in our judgment, when the evidence is admitted explaining what the term "furnishing trade" means, the contract still falls far short of being sufficiently certain to be enforceable. The language of the contract does not sufficiently specify either the quantity or price of the goods to be sold, nor does it afford any basis for ascertaining the amount to be furnished under the contract. The language of the contract amounts only to an undertaking on the part of appellee to buy all of his goods during the year 1912 from appellant. He does not agree to purchase any particular quantity of goods nor a quantity sufficient to serve any use specified in the contract.

Now, it is elemental in the law of contracts that one is not enforceable which does not with certainty describe the subject-matter or fix some basis upon which the scope of the subject-matter can be ascertained.

The rule is stated in one of the encyclopedias as follows: "In order to constitute a valid verbal or written contract, the subject-matter of the agreement must be expressed by the parties in such terms that it can be ascertained to a reasonable degree of certainty." 7 Am. & Eng. Enc. Law, p. 116.

Mr. Elliott, in his Commentaries on the Law of Contracts (vol. 1, § 180), after stating the rule with reference to aiding, by parol testimony, the language of a contract, says:

"However, where the amount to be furnished is not governed by the needs of a particular business or undertaking and the determining factor is altogether uncertain, as where the purchaser is not bound to take any of the thing bargained for or is free to demand, in many instances, an unlimited amount should he desire it, the agreement is too indefinite to be upheld."

He cites authorities in support of this doctrine, among which may be consulted with profit the following: *Price* v. *Weisner*, 83 Kan. 343, 111 Pac. 439, 31 L. R. A. (N. S.) 927; *Price* v. *Atkinson*, 117 Mo. App. 52, 94 S. W. 816; *Wheaton* v. *Cadillac Automobile Co.*, 143 Mich. 21; *Price* v. *Stipek*, 39 Mont. 426, 104 Pac. 195; *City of Fort Scott* v. *Eads Brokerage Co.*, 117 Fed. 51; *Blakistone* v. *German Bank*, 87 Md. 302, 39 Atl. 855.

Judge Sanborn, in delivering the opinion in the Federal case cited above, said:

"A contract for the future delivery of personal property is void for want of consideration and mutuality if the quantity to be delivered is conditioned by the will, wish or want of one of the parties."

We find in this contract nothing more than an undertaking on the part of the appellee to purchase all of his goods during the specified year from appellant—not any specified quantity nor at any price mentioned, but merely such quantity as he might desire to purchase at a price thereafter to be agreed upon; and when the test laid down in the authorities quoted from is applied, the contract is too vague and indefinite to be enforceable.

The fact that appellee afterward purchased a certain quantity of goods from another dealer has no force in determining his liability upon the contract with appellant. The question is not how much he did purchase, but what he obligated himself to purchase from appellant.

The case was, in our judgment, correctly determined by the circuit judge on demurrer, and we think the case should be affirmed.