BAILEY *v.* SUTTON.

4-7520                                              185 S. W. 2d 276

Opinion delivered February 12, 1945.

*Joseph R. Brown* and *Heartsill Ragon,* for appellant.

*Hardin, Barton & Shaw* and *Warner & Warner,* for appellee.

McFADDIN, J. Appellant was the plaintiff in the lower court. He sued appellee (defendant below) for insurance commissions lost because the appellee refused to buy insurance from appellant on the Southern Hotel building in Fort Smith. At the conclusion of the evidence for the plaintiff the circuit court directed a verdict for the defendant; and this appeal challenges the correctness of that order.

The plaintiff was engaged in the real estate and insurance business in Fort Smith, and negotiated the sale of the Southern Hotel building from the owner to the Fort Smith Realty Company, in which the defendant was interested, and for whose obligations it is claimed that the defendant is liable. The Fort Smith Realty Co. made a written proposal to the owner to buy the property for a stated consideration, with part to be cash and "the balance of twenty-six thousand ($26,000) dollars by purchase money note or notes secured by deed of trust or mortgage on above-described property, in form satisfactory to the seller, with interest from date of settlement at the rate of 4¼ per cent., payable semi-annually. The said note or notes to be paid as follows: In equal semi-annual principal installments plus 4¼ per cent. interest amortized over a period of fifteen years. Purchaser to have the privilege of paying any or all of balance at any interest paying period by giving sixty (60) days' notice."

The Fort Smith Realty Company, as a part of the transaction, wrote the plaintiff a letter, agreeing that if the owner sold the property to the Fort Smith Realty Company, then it would pay Bailey "as a commission, $500"; and, furthermore, agreed in the letter: "We also agree for you to write all insurance during the period of

the 15-year term." It is this last quoted sentence that caused the lawsuit and this appeal.

The owner sold the property to the Fort Smith Realty Company in July, 1941, and that company paid Bailey the $500 commission, and accepted the insurance policies from him for one year as written by him, and paid the premiums thereon. Some time before July, 1942, the mortgage for $26,000, for the balance of the purchase price as hereinbefore referred to, was paid in full by the Fort Smith Realty Company; and in July, 1942, the defendant (acting for and as the realty company) refused to accept any further insurance policies from the plaintiff when they were tendered. Thereupon the plaintiff filed this action for his commissions on the insurance policies tendered, and also his commissions on policies that might be tendered for the remaining thirteen years.

Many interesting questions are argued in the briefs, such as mutuality, extent of disclosure of agent to principal, and liability of persons who subsequently incorporate. We find it unnecessary to discuss these matters in detail, because of the views hereinafter expressed. There is sufficient mutuality in this case under the law as announced in *Wilkes* v. *Stacy,* 113 Ark. 556, 169 S. W. 796, and cases there cited. Moreover, the facts herein show disclosure of agent to the principal, if (1) we view the evidence in the light most favorable to the plaintiff and consider the evidence which the court excluded (and which we think should have been admitted); and, (2) if we place on this evidence the construction appellant seeks to give it. Furthermore, when the contract here sued on was signed, no articles of incorporation involving the realty company had been filed with either the Secretary of State or the county clerk. The parties were merely partners at that time; and therefore the defendant may be sued as a partner. We pass to other questions.

I. *The Contract was Ambiguous.* The trial court should have submitted the case to the jury to determine the meaning of the contract between the parties. When a contract is definitely shown, and the language therein

contains no latent ambiguity, it is the duty of the court to construe the contract. But, when the contract has a latent ambiguity, the question of the meaning of the contract should be submitted to the jury. *Dorr* v. *School District,* 40 Ark. 237; *Wilkes* v. *Stacy,* 113 Ark. 556, 169 S. W. 769; *Wisconsin & Arkansas Lumber Co.* v. *Fitzhugh,* 151 Ark. 81, 235 S. W. 1001; *Agey* v. *Pederson,* 191 Ark. 497, 86 S. W. 2d 930. In the case of *Agey* v. *Pederson* the language of the contract was "also agree to lease above rig for $50 per day to complete said well. . . ." The quoted language caused a lawsuit. One party contended that the language meant $50 for every day the rig was used to complete the well. The other party contended that the language meant $50 for every day until the rig was returned. The trial court submitted to the jury the question of the intention of the parties and the meaning of the language; and this court held that the trial court was correct, saying:

"The rule of law is that where a written contract is ambiguous in whole or in part, the meaning thereof should be left to the jury. *Jones* v. *Lewis,* 89 Ark. 368, 117 S. W. 561; *Yale Automobile Company* v. *Walker,* 145 Ark. 344, 224 S. W. 632; *Wisconsin & Arkansas Lumber Company* v. *Fitzhugh,* 151 Ark. 81, 235 S. W. 1001.

"The lower court's construction of the instant contract was that it is ambiguous in that it failed to state whether appellees should pay $50 per day for each day they kept the drilling rig or $50 per day for the days they actually used the outfit in completing the well. This ambiguity existed in the writing, and the court correctly submitted to the jury the question of the meaning of the language employed in this particular."

There is no distinction between the case of *Agey* v. *Pederson, supra,* and the case at bar. Here the contract said: "we also agree for you to write the insurance during the period of the 15-year term." To what did the language, "period of the 15-year term," refer? The appellee contends that it referred to the period of the life of the mortgage, which was 15 years, with the right of payment

at any time; and that when the mortgage was paid within the year, then the appellant lost his right to any further insurance. The appellant contends that the language was intended to mean 15 years at all events, regardless of the payment of the mortgage. The contract thus contained a latent ambiguity, and the question of the intention and the meaning should have been submitted to a jury under the proper instructions of the court.

II.  *Res Judicata.*  Since the cause is to be remanded for new trial under the instructions herein contained, we think it fitting that we consider the matters in this section and in § III, *infra.* We point out that the judgment, on the jury's verdict on the question of the meaning and intention of the contract, will be *res judicata* on that question in any successive action for damages based on the same contract. *Nat'l Surety Co.* v. *Coates,* 83 Ark. 545, 104 S. W. 219; same case on second appeal 89 Ark. 542, 117 S. W. 595.

III.  *Recovery, if any, in this Present Case is Limited to the Damages Caused by Defendant's Refusal to Accept Policies Tendered in July, 1942.*  The case at bar comes within the rule set forth in *Mfrs. Furn. Co.* v. *Read,* 172 Ark. 642, 290 S. W. 353, which is in point here. For several reasons, the rule of anticipatory breach as allowing action for damages on the entire contract (see *Roehm* v. *Horst,* 178 U. S. 1, 20 S. Ct. 780, 44 L. Ed. 953; and Annotation in 105 A. L. R. 460) cannot be extended to a case like the one at bar, where the ability of the plaintiff to deliver insurance policies over a period of years is problematical and speculative. No one can be sure that any insurance will be written for any year except the one year whose policies were tendered in July, 1942. Subsequent years depend on events beyond the present control of the parties: *i. e.,* there might be a change in insurance rates, the property might cease to be insurable, the plaintiff might not be able to write insurance, etc. It will be time enough to consider these problems when they arise in any year or three-year period, as insurance is written, and as the defendant might elect, if it be adjudged that a contract continues to exist. In *Johnson & Higgins* v.

*Harper Transportation Co.,* 228 Fed. 730, the plaintiff sought to recover damages for failure of the defendant to take insurance policies for two years. Even though recovery was allowed for the second year, nevertheless, the trial judge (p. 743) expressed some concern over the remoteness of the damages for the second year.

It must be remembered at all times that the plaintiff sues for damages, and not for commissions. Even if we consider the plaintiff as an insurance broker, the rule is as stated in 32 C. J. 1090, to-wit: "But where by custom of business a broker's compensation comes from the company in the shape of a commission or percentage upon the premiums paid, one who employs an insurance broker to obtain insurance does not thereby incur any liability to pay the broker commission as such, at most he impliedly agrees to accept the insurance when procured and pay the premiums thereof, and thus enable the broker to earn his commissions from the company, and in case of a breach of such agreement the broker's remedy against such person, if any, is for damages for precluding him from earning the commissions, and not for the commissions themselves."

It follows that the judgment in the case at bar is reversed, and the cause is remanded with directions to submit to the jury for determination: (1) Whether by the language "during the period of the 15-year term" it was intended and meant (a) the period of existence of the mortgage indebtedness, or (b) fifteen years, regardless of the mortgage indebtedness; and if (b) be found by the jury, then, (2) What damages the plaintiff suffered by reason of the failure of defendant to accept the policies actually tendered in July, 1942. Also on a new trial there may be submitted to the jury the issue (if relevant) concerning full disclosure of agent to principal, as well as other fact questions.

For the reasons stated, the judgment is reversed, and the cause is remanded with the directions herein contained.

HOLT, J., dissenting. I cannot agree with the majority view. The foundation of this action as based upon the letter of June 6, 1941, which, omitting formal parts, is as follows: ''We, Fort Smith Realty Company, agree to pay you as commission five hundred ($500) dollars, if and when the Massachusetts Mutual Life Insurance Company agree to sell the property known as 609-11 Garrison Ave., being a part of lots 2 and 3, block 25, City, Fort Smith, Ark., known as the Haglin property, for the sum of thirty-one thousand ($31,000) dollars. We also agree for you to write all insurance during the period of the fifteen-year term.''

It seems to me that this agreement is entirely lacking in mutuality and is too indefinite to be enforced. Obviously, there are no provisions in this contract obligating appellee to carry insurance on the property in question for any certain time or for any amount, and there is no obligation on appellant to write such insurance. The cost of the insurance is not specified and could not be definitely determined for the reason that the owner had the right to determine the amount, if any, to be carried. The agreement is indefinite and uncertain and is not capable of being made certain and therefore is unenforceable.

This court in *Ashley, Drew & Northern Railway Company* v. *Baggott & Boyd,* 125 Ark. 1, 187 S. W. 649, said: ''The contract is so indefinite that it is incapable of being enforced. It is evident that courts neither specifically enforce contracts nor award substantial damages for their breach when they are wanting in certainty. Damages cannot be measured for the breach of an obligation when the nature and extent of the obligation is unknown, being neither certain nor capable of being made certain. 6 R. C. L. 644; Page on Contracts, vol. 1, § 28,'' and in 12 Am. Jurisprudence, p. 554, § 64, the rule is stated as follows: ''An agreement to be binding must be definite and certain. Accordingly, where the agreement rests upon an offer, the offer to be binding must be definite. It is evident that courts can neither specifically enforce agreements nor award substantial damages for their breach when they are wanting in certainty. Dam-

ages cannot be measured for the breach of an obligation when the nature and extent of the obligation are unknown, being neither certain nor capable of being made certain.''

The agreement, as I view it, is totally lacking in mutuality and is also unenforceable for this reason. In *El Dorado Ice & Planing Mill Company* v. *Kinard,* 96 Ark. 184, 131 S. W. 460, this court said: ''A contract to be enforceable must impose mutual obligations on both of the parties thereto. The contract is based upon the mutual promises made by the parties; and if the promise made by either does not by its terms fix a real liability upon one party, then such promise does not form a consideration for the promise of the other party. As is said in the case of *St. Louis, I. M. & S. Ry. Co.* v. *Clark,* 90 Ark. 504, 119 S. W. 895: 'Mutuality of contract means that an obligation must rest on each party to do or permit to be done something in consideration of the act or promise of the other; that is, neither party is bound unless both are bound.' A contract, therefore, which leaves it entirely optional with one of the parties as to whether or not he will perform his promise would not be binding on the other.''

For these reasons, I think the alleged damages could not be measured for the alleged breach of the contract. Appellant, under this agreement, which is not susceptible of being made certain, should not be permitted to recover upon an arbitrary and unwarranted assumption that any specific amount of insurance would have to be carried on the property in question for every year of the fifteen-year term referred to. I think no such obligation was imposed by the letter, *supra,* and I can find no basis for measuring the damages, if any, occasioned by appellee's refusal to permit appellant to write the insurance beyond the first year.

The judgment should be affirmed.

I am authorized to say that Mr. Justice McHaney concurs in this dissent.