## GALLERY & CUSHMAN vs. PRINDLE.

On the 7th of April, 1846, the defendant entered into a contract, under seal, with H. & M., by which he agreed to furnish them a sufficient quantity of wool to run their factory for one year, for the consideration of his commissions of three cents per yard on all cloths manufactured by them; M. & H. agreeing to deliver to the defendant all cloths manufactured by them during the year, to be delivered on every Saturday night; the defendant to have the entire control of the cloths, to have, or hold or sell, whenever or wherever he could get the best prices for the same; M. & H. agreeing that the cloths might be sold by some good auction house, for cash, and that all expenses attending sale, transportation, insurance, commissions, &c. should be deducted, and the balance paid over to M. & H. . The defendant also agreed to advance ten cents per yard on all the cloths manufactured, as fast as delivered.  The expenses were declared to consist in the cost of the wool, transportation, commissions, and the advance of ten cents per yard, insurance, &c.; all of which M. & H. agreed to pay, or allow to be deducted out of the sale of the cloths.  On the 13th of July, 1846, M. gave the defendant a chattel mortgage on a portion of the machinery and cloths, yarn, &c. in the factory, conditioned to pay him whatever losses might arise, or which he might sustain by or under the above contract; such losses, if any, to be paid to the defendant on demand.  M. & H., being indebted to the plaintiffs, on the 10th of September, 1846, made and delivered to them a draft or order upon the defendant in these words: " Sir, Pay to G. & C. or order three hundred dollars out of the balance that will be due us from the sales

Gallery v. Prindle.

of cloths that you now have or may have of us, together with the woolen machinery upon which you have a chattel mortgage, after deducting the amount you have advanced us, with your charges and commissions. M. & H." This draft or order was accepted by the defendant as follows: "Accepted, 10th Sept. 1846." In an action upon this acceptance; *Held*, that the order looked to a future expected balance to be due from the defendant to M. & H.; and that the acceptance was an agreement to pay out of such expected balance; the fund upon which the order was drawn being what should finally remain in the defendant's hands after all the property he had received, or should thereafter receive, from the drawers, under the contract, together with that embraced in the mortgage, should be converted into money, and his claims upon it deducted.

And it appearing from the evidence, that at the date of the draft there was a balance due from M. & H. to the defendant, it was *held* that the contingency upon which his liability on the acceptance depended had never arisen.

MOTION to set aside the report of a referee. On the 7th of April, 1846, the defendant entered into a contract under seal, of that date, with John Hinchcliff and Samuel Millman, by which he agreed to furnish them a sufficient quantity of wool to run their factory for one year from date, for the consideration of his commissions of three cents per yard on all cloths manufactured by them after the date of the contract; Millman & Hinchcliff agreeing to deliver to the defendant all cloths manufactured by them during the year, to be delivered on every Saturday night for the period of one year; the defendant to have entire control of the cloths, to have or hold or sell, whenever or wherever he could get the best prices for the same; Millman & Hinchcliff agreeing that the cloths might be sold by some good auction house for cash, if thought advisable; and that all expenses attending sale, transportation, insurance, defendant's commissions, &c. should be deducted, and the balance paid over to them the said Millman & Hinchcliff. The defendant also agreed, in and by the contract, to advance ten cents per yard on all the cloths manufactured, as fast as they should be delivered. The contract then concluded as follows: "The expenses consist in the cost of the wool, transportation, commissions, and the advance of ten cents per yard, insurance, &c.; all of which the said parties of the second part [Millman & Hinchcliff] do agree to pay or allow to be deducted out of the sale of the cloths."

On the 13th of July, 1846, Millman gave the defendant a chattel mortgage on two sets of machinery, consisting of four carding machines, two spinning jacks, six power looms, one picker, one shearing machine, one press with plates and papers, one brushing machine, one gig, one dye kettle, one steam regenerator, one pair fulling stocks, bobbins, spools, and all other articles attending said machinery, or all articles, tools, &c. belonging to the establishment; also all the wool, cloths, yarn, &c. and all other goods and chattels whatsoever then remaining in the basement and third stories of the Hydraulic buildings, on Brown's mill-race in the city of Rochester, in possession of said Millman & Hinchcliff; conditioned to pay the defendant " the sum of any or all such losses which may arise, or which the party of the second part may in any way sustain by or under a certain contract made by the parties of the first part to the party of the second part, for the manufacturing of wool into cloths, on 7th day of April, 1846; said losses, if any, to be paid to the said party of the second part, on demand," &c.    Millman & Hinchcliff being indebted to the plaintiffs, who were partners in business under the name and style of Gallery & Cushman, in the sum of $300, on the 10th September, 1846, made and delivered to them a draft or order upon the defendant in the words and figures following : " William Prindle, Esquire—Sir : Pay to Gallery & Cushman, or order, three hundred dollars, out of the balance that will be due us from the sales of cloths that you now have or may have of us, together with the woolen machinery upon which you have a chattel mortgage, after deducting the amount you have advanced us, with your charges and commissions.  Rochester, September 10, 1846.   Millman & Hinchcliff."  This draft or order was, on the day of its date, accepted by the defendants, in words and figures following : " Accepted, 10th Sept. 1846."   The present action was brought upon this acceptance, to recover the amount of the order and interest.

The cause was referred to Orlando Hastings, as sole referee, and tried before him on the 31st day of January, 1849.  On the 17th day of June following, he made a report in favor of the plaintiffs, for $333,83, which included the amount of the draft

and interest from November 6, 1847, the time the suit was commenced.

On the trial the foregoing facts appeared, and also the following. That Millman & Hinchcliff were partners in the manufacturing woolen cloths in the city of Rochester. That their partnership commenced in April, 1846, and that Hinchcliff went out of the business on the 23d day of October in the same year. That during the continuance of said business, between the month of April, 1846, and the time when Hinchcliff went out of the business, Millman & Hinchcliff manufactured and delivered to the defendant for sale, 11,881¾ yards of cloth, which the defendants sold at Boston, New-York, Buffalo and various other places, the chief part of them in New-York. Very few of them had been sold when Hinchcliff left the business in October. When he went out, Robert Carpenter took his place in the business. At the time when Hinchcliff went out, there was stock on hand, which had been purchased by the defendant and delivered to Millman & Hinchcliff, sufficient to make about 4000 yards of cloth. Millman & Carpenter went on and manufactured this, with other stock furnished by the defendant, into cloth, and delivered it to the defendant for sale. It would require from 5000 to 6000 pounds of wool to make 4000 yards of cloth. The wool from which most of the cloth delivered by Millman & Hinchcliff to the defendant was manufactured, was purchased in Rochester, at 28 cents a pound. There was 8000 pounds so purchased. The defendant produced, upon the trial, an account, which was admitted to be correct, showing the dates and amounts of his advances to or for the benefit of Millman & Hinchcliff and Millman & Carpenter, in pursuance of the contract of April 7, 1846, and of the quantities of cloth received, and dates when received, and of the proceeds of all the cloths received by him, and dates when received. He also produced, at the plaintiff's request, an account of the proceeds of the sale of the property described in the chattel mortgage, which sale took place May 11, 1847, under the mortgage, which proceeds amounted to $1389,06. From the accounts presented it appeared that from the 2d of May, 1846, to the 30th April, 1847, inclusive, Millman & Hinchcliff and

Millman & Carpenter had delivered to the defendant, in all, 21,123¾ yards of cloth.

By the account of sales of cloth, it appeared that the defendant had received on such sales, from the 7th August, 1846, to the 30th April, 1847, inclusive, in all $7853,15, and that the defendant's account of payments for wool delivered, commissions, advances, &c., from the 7th April, 1846, to June 14, 1847, inclusive, amounted to $9455,02, to which was added Millman & Hinchcliff's note and interest, up to February, 1849, $211,88, making in all $9666,90. It did not appear that the defendant had settled with Millman & Hinchcliff, or with Millman & Carpenter.

*H. R. Selden*, for the defendant.

*Geo. Mumford*, for the plaintiffs.

*By the Court*, WELLES, J. The order in question looks to a future expected balance to be due from the defendant to Millman & Hinchcliff, and the acceptance is an agreement to pay out of such expected balance. If no such balance should ever be found to exist, most clearly no liability of the defendant could arise out of the acceptance. The acceptance, which must be taken with reference to the terms of the order, and in connection with it, is an agreement to pay the plaintiffs out of such balance, and of necessity is conditional—that is, an agreement to pay provided there should be a balance. The expression, " after deducting the amount you have advanced us," &c. taken in connection with the whole instrument, and the circumstances of the case, is to be understood with reference to the time when the balance should be struck or ascertained, and is to have the same effect as if the words had been " after deducting the amount you *will* have advanced us." This perhaps is not the strict grammatical construction, but it seems to me it is manifestly what the drawers and acceptor understood and intended.

The inquiry then arises, what balance the parties to the order had reference to, upon what account it was to arise, and when

it was to be ascertained. Looking at the contract of the 7th of April, 1846, we find that a balance was contemplated to be due from the defendant to Millman & Hinchcliff, upon the winding up of their business under the contract, and not before. All that the defendant was bound to pay until then, was ten cents a yard on the cloths delivered. The cloths were to be delivered every Saturday night as they were manufactured, and the ten cents a yard advance was to be made upon such delivery. This would produce no balance, and was evidently not what the parties intended in the order by a balance that was thereafter to become due to the drawers. The order in terms negatives such an idea, for it speaks of the balance to become due from the sales of cloths. Going back to the contract, we see that just such a balance was provided for. It is a balance on the proceeds of sales of the cloths, after deducting the cost of the wool, transportation, commissions and advance of ten cents a yard, insurance, &c. The nature of the transactions of the parties under the contract I think repels the assumption that they were to have settlements, and strike balances from time to time during the year, or at any time until the whole contract should be closed; or that any money was to be paid by the defendant before that time, beyond the ten cents a yard upon the cloth. It was a contract running through the year, requiring the daily performance of important duties by both parties. It required large advances to be made by the defendant, for which he was to have the cloths as security, without restriction of time or mode of sale; and as the defendant's advances would, of necessity, always be in advance of his receipts, it is unreasonable to suppose that the agreement contemplated a balance due Millman & Hinchcliff before the close of the year, or that any settlement was to be had until after the sales of all the cloths. To provide against unreasonable delay in the disposition of the cloths by the defendant, he was at liberty to sell at auction.

In July previous to the date of the order, it appears the parties to the contract, the defendant and Millman & Hinchcliff, apprehended the defendant might sustain losses under the contract, and to secure him against them, Millman & Hinchcliff

executed a chattel mortgage on their machinery. When they drew the order they made direct reference to the property held by the defendant under the mortgage, and the balance out of which they required the defendant to pay the plaintiffs is one which should remain on the proceeds of sales of cloths, together with the property mortgaged. This fact is a strong confirmation of the view taken, that the fund upon which the order was drawn was what should finally remain in the defendant's hands, after all the property he had received, or should thereafter receive, from the drawers, under the contract, together with that embraced in the mortgage, should be converted into money, and his claims upon it deducted.

This leads to the inquiry whether there was, at the close of the sales of the cloths received by the defendant, a balance due to Millman & Carpenter, the latter having been substituted in the contract in the place of Hinchcliff.

The case shows that the total amount of receipts by the defendant, on sales of cloths received under the contract, was $7853,15. That the goods mortgaged were sold under the mortgage in May, 1847, and produced $1389,06. This, added to the last sum, amounts to $9242,21. The defendant's account for wool, money advanced, commissions, &c. under the contract, without including the last item, which is for a note against Millman & Hinchcliff, amounts to $9455,02—showing a balance of over $200 in his favor.

If the foregoing views are substantially correct, the contingency has never arisen upon which the defendant's liability under his acceptance of the order depended, and consequently the report of the referee against him must be set aside, and a new trial ordered before the same referee, with costs to abide the event.

[Monroe General Term, June 3, 1851. *Welles*, *Taylor* and *Johnson*, Justices.]