CASE 32—ACTION ON AN ACCEPTED ORDER—JUNE 14.

111  271
114  549
111  271
120  357

# Crane, &c., v. Williamson, &c.

APPEAL FROM BOYD CIRCUIT COURT.

JUDGMENT FOR PLAINTIFFS AND DEFENDANTS, C. CRANE & CO., APPEAL. REVERSED.

PAROL TESTIMONY TO VARY WRITING—ACCEPTANCE OF ORDER PAYABLE OUT OF PROCEEDS OF TIMBER—RIGHT OF ACCEPTOR TO DEDUCT AD-
VANCES MADE.

Held:  1. In determining the liability of the acceptors of an order, evidence as to a parol agreement under which the order was drawn is not admissible, in the absence of fraud or mistake.

2. Where the terms of a writing are indefinite or uncertain, the court may consider the situation and surroundings of the par ties, to arrive at their real intention.

3. Where defendants accepted an order payable out of the first money due the drawers on a timber contract, after deducting. any money they might have to advance to enable the drawers to get the timber out and rafted ready for delivery, they had the right to make such advances as were necessary to keep the drawers on their feet and to protect the timber from seizure under legal process, and are therefore entitled, before paying the order, to deduct advances made upon the assurance of the drawers that they were necessary to meet certain charges on the logs, as they had no notice that the assurances were untrue, and the advances were made according to the usual course of business, and within the reasonable expectation of the parties. when the order was given.

CHIEF JUSTICE PAYNTER AND JUDGE WHITE, DISSENTING.

CHARLES W. BAKER AND R. C. BURNS, FOR APPELLANTS, C. CRANE. & Co.

About August 31, 1896, Ben Williamson & Co. posted to C. Crane & Co., at Cincinnati, Ohio, this order:

"C. Crane & Co., Cincinnati, Ohio:  Pay to the order of Ben Williamson & Co., out of the proceeds of timber delivered here-
after from waters of Twelve Pole and Guyandotte rivers, West Virginia, the East Lynn and R. A. Lewis jobs, under our con-
tract with you, the sum of $5,731.39, and this shall stand as your receipt for all payments made.

"August 31, 1896.                    R. H. PRICHARD,
                          "PRICHARD & BRUBAKER."

Crane, &c., v. Williamson, &c.

C. Crane & Co. refused to acept this order and returned the following order as embodying his understanding of the contract:

"Messrs. C. Crane & Co., Cincinnati, O.: Gentlemen:— Pay to the order of Ben Williamson & Co., out of the first money due us on the Twelve Pole and Guyandotte rivers, West Virginia, the East Lynn and R. A. Lewis jobs, under our contract with you, which means after deducting all moneys you have paid on said timber and any moneys you may have to advance in order to get same out and ready for delivery, as per our contract with you, the sum of $5,731.39; and this shall stand as your receipt for all payments so made:

"September 8, 1896."  R. H. PRICHARD,
"PRICHARD & BRUBAKER."

"September 8, 1896.  Accepted.

"C. Crane & Co."

This order means (1) that you are only to pay this sum after deducting all moneys you have paid on said timber, and (2) any money that you may have to advance in order to get the same out and ready for delivery, &c., and (3) nothing was to be paid "until due us under our contract with you."

From which we conclude:

(a) That the order sued on is a writing that was entered into contemporaneously with the verbal contract and is therefore to be read and construed therewith.

(b) If mistaken in this, then we contend that the order is conditional.

We submit that both upon the facts and the law there should not have been a judgment against C. Crane & Co. upon this order.

### AUTHORITIES CITED.

43 L. R. A., 467, and cases cited; Rogers v. Smith, 47 N. Y., 324; Weston v. Pollard, 16 B. M., 315; Richardson v. Dingle, 11 Rich. L., 407; Knight v. Knotts, 8 Rich. L., 35; Clinch Valley Coal & I. Co. v. Willing, 180 Pa., 165; Braley v. Henry, 71 Cal., 481; Thomson v. Sexton, 15 S. C., 93; Booth v. Fitzger, 82 Ind., 66; Watkins v. Bowers, 119 Mass., 383; Am. Gas & V. & M. Co. v. Wood, 43 L. R. A., 449; Hill v. Huntress, 43 N. H., 480; Gole v. Harp, 64 Ark., 462; Goodwin v. Nickerson, 51 Cal., 166; Smith v. Carter, 25 Wis., 283; Munro v. King, 3 Colo., 238; Rogers v. Smith, 47 N. Y., 324; Carrington v. Waff, 112 N. Y., 115; Thomas v. Page, 3 McLean, 167; Ruggles v. Swanwick, 6 Minn., 526; Juilliard v. Chaffee, 92 N. Y., 530; Tiedeman, 29; Chitty on Bills, 221; Story on Bills, 254; Steele v. McKinley, 43 L. J. R., 358; Tiedeman, 219; U. S. v. Bank of Metropolis, 15 Pet., 395; Lindon v. Beach, 6 Hun. N. Y., 200; Lawrence v. Clark, 36 N. Y., 128; Pratt v. Coman, 37 N. Y.,

440; Barnard v. Campbell, 58 N. Y., 73; Crowell v. Plant, 53 Mo., 145; Pettis County v. Kingsbury, 17 Mo., 479; Campbell v. Polk County, 49 Mo., 214; Owen v. Lavine, 14 Ark., 389; Hamilton v. Myrick and Williamson, 3 Ark., 541; Gwinn v. Roberts, 3 Ark., 72; Gallery v. Prindle, 14 Bab., 186; Babers v. Johnson, 5 D. C., 305; Baker v. Dobbins, 87 Ga., 545; Bryant & Ewers v. Hagerty, 87 Pa. St., 256; Jenks v. Wills, 90 Mich., 515; Am. Trust & Bank Co. v. Boone, 29 S. E., 182, sec. 1; Nat. Bank v. Ins Co., 104 U S., 54; Board Chosen Freeholders of Essex N. J. v. Newark City Nat. Bank, &c., 48 N. J. Eq., 51 (21 Atl., 185); Walker v. Manhattan Bank, 25 Fed. Rep., 245-255; Evans v. Evans, &c., 4 N. W., 929 (82 Iowa, 492); Eyrich v. Capital State Bank, 6 So., 615 (67 Miss., 60), Syl. 9; Proctor v. Hardigan, 9 N. E., 841.

HAGER & STEWART, ATTORNEYS FOR APPELLEES, BEN WILLIAMSON & Co.

## POINTS AND AUTHORITIES.

1. Parol evidence not competent to contradict the terms of acceptance. Daniel Neg. Inst., sec. 517; Wright v. Morse, 9 Gray, 337; Blackistone v. German Bank, 39 Atl. R., 855; Beaverin v. Donnell, 7 Smedes & Marsh., 244; Wilson v. Dean, 74 N. Y., 531; Moore v. Parler, 16 Ky. Law Rep., 125; Smith v. Vertue, 30 L. J. C. P., 59 (4 Eng. Rul. Cases, £46).

2. The assignment is good as payable out of funds to be earned under existing contract. Manley v. Bitzer, 91 Ky., 596; Pomeroy Eq., sec. 1286; Story Eq., sec. 1040.

3. Treated as assignment, merely, the order fixed the fund beyond power of depletion by subsequent act of the parties. Buckner v. Sayre, 18 B. Mon., 745; Newby, etc., v. Hill, 2 Met., 530; Morton v. Naylor, 1 Hill, 583; Yeates v. Groves, 1 Ves. Jun. 280; Bradley v. Root, 5 Paige, 632; Brill v. Tuttle, 81 N. Y., 454; Munger v. Shannon, 61 N. Y., 251; Mandeville v. Welch, 1 Wheat., 233; 5 Wheat, 277; Cantrill v. Hewlett, 2 Bush., 30; Parker v. Syracuse, 31 N. Y., 376; Brice v. Bannister, 3 Q. B. D., 569 (10 Eng. Rul. Cases, 411); Perry v. Harrington, 2 Metc. (Mass.), 368; 37 Am. Dec., 98.

4. By express engagement appellant agreed to pay on conditions shown to have been performed and thus conclusively appropriated it to payment of appellees' debts. Buckner v. Sayre, 18 B. Mon., 745, and cases above cited; also Williams v. Everett, 14 East., 581; Risley v. Smith, 64 N. Y., 582; Beardsley v. Cook, 38 N. E. (N. Y.), 109.

5. By terms of contract in evidence, title to timber passed to appellant, and the relation of Prichard and Brubaker thereto was

Crane, &c., v. Williamson, &c.

as agents, or bailees of appellant for further delivery. Hagins
v. Combs, 19 Ky. Law Rep., 1165; Bank of Huntington v. Napio,
41 W. Va., 487; Byles v. Collier, 54 Mich., 1; Terry v. Wheeler,
25 N. Y., 522; Standard Oil Co. v. Van Eaton, 107 U. S., 325;
Benjamin on Sales, sec. 309 and notes.

6. Comment on cases cited for appellant, viz.: Goodwin, Admr., v.
Amer. Nat'l. Bank, 48 Conn., 550; National Bank v. Insurance
Co., 104 U. S., 54; Board, &c., of Essex v. Newark, &c., 48 N.
J. Eq., 51; Walker v. Manhattan Bank, 25 Fed., 247; Gallery v.
Prindle, 14 Barb., 186; Baker v. Dobbins, 87 Ga., 545; Bryant,
&c., v. Hagerty, 87 Pa. St., 256; Jenkins v. Wells, 90 Mich., 515;
Bradford v. Drew, 46 Mass., 188; Ferguson v. Davis, 65 Mich.,
677.

OPINION OF THE COURT BY JUDGE HOBSON—REVERSING.

Appellants, C. Crane & Co., are lumbermen doing business at Cincinnati, Ohio. They made contracts with R. H. Prichard and J. P. Brubaker, doing business as a firm under the name of Prichard & Brubaker, for the purchase of a large number of logs on Twelve Pole and Guyandotte rivers and their tributaries, in West Virginia. Part of the logs had been delivered prior to September 1, 1896. Appellees, Ben M. Williamson and W. J. Williamson, as partners under the firm name of Ben Williamson & Co., are merchants at Catlettsburg where Prichard & Brubaker also resided, and had a debt against them, for supplies furnished them, amounting to $5,731.39. About September 1, 1896, appellees, Williamson & Co., presented to appellants, Crane & Co., for acceptance, the following order drawn on appellants by Prichard & Brubaker:

"C. Crane & Co., Cincinnati, Ohio: Pay to the order of Ben Williamson & Co., out of the proceeds of timber delivered hereafter from waters of Twelve Pole and Guyandotte rivers, West Virginia, the East Lynn and R. A. Lewis jobs under our contract with you, the sum of $5,731.39; and this shall stand as your receipt for all pay-

ments made. R. H. Prichard.     Prichard & Brubaker.
Aug. 31, 1896."

Previous to the sending of this order there had been an
interview between appellants and Williamson & Co. in
which it had been arranged that an order should be drawn,
and would be accepted.  Crane & Co. declined to accept
the order on the ground that it was not worded just as
they wanted it worded, and did not conform to their
understanding of the arrangement.   Later they wrote out
the following order, which was duly signed by Prichard
& Brubaker and accepted by them:

"Catlettsburg, Boyd county, Kentucky.   Messrs. C.
Crane & Co., Cincinnati, Ohio—Gentlemen:  Pay to the
order of Ben. Williamson & Co., out of the first money
due us on the Twelve Pole and Guyandotte rivers, West
Virginia, the East Lynn and R. A. Lewis, jobs, under our
contract with you, which means, after deducting all mon-
eys you have paid on said timber, and any money that you
may have to advance in order to get same out and rafted
ready for delivery as per our contract with you, the sum
of $5,731.39; and this shall stand as your receipt for all
payments so made.  R. H. Prichard.  Prichard & Brubaker.
September 8, 1896.

"Accepted.  C. Crane & Co."

By the arrangement between Crane & Co. and Prichard
& Brubaker, Crane & Co. were to make advances to
Prichard & Brubaker on the logs, to enable them to get
the timber out.    At the time the order was accepted,
Prichard & Brubaker had delivered to Crane & Co., logs
to the amount of about $37,000, and had been advanced on
the contracts about $75,000.   After the order was given,
Prichard & Brubaker continued to deliver logs, and Crane
& Co. continued to make advances from time to time, until

Prichard & Brubaker failed, in the spring of the year 1897. After the failure of Prichard & Brubaker, a settlement was made between them and Crane & Co., on which it turned out that Crane & Co. had advanced in all $162,570.18, and that, after crediting Prichard & Brubaker by all the logs delivered, there was a balance due from them to Crane & Co. of $3,392.19. This amount was reduced about one-third by some logs afterwards delivered. Appellees, Williamson & Co., then filed this action against Crane & Co.; on the order which they had accepted, to recover the amount of the order, on the ground that, of the total sum advanced by Crane & Co., after September 8, 1896, $11,930.-33 was not used by Prichard & Brubaker in getting out the timber, but was applied by them to the payment of other debts, and that to this extent, or more, Crane & Co. should not have paid the money to Prichard & Brubaker, but retained it for the payment of the order. The court below held Crane & Co., responsible, and they have appealed.

It is insisted for appellants that the evidence offered by them as to the verbal arrangement under which the order was drawn should have been admitted. This evidence was properly excluded by the court below. When parties have deliberately put their contract in writing, the writing supersedes the parol negotiations, and their rights must be determined from the written contract itself, in the absence of fraud or mistake. Moore v. Parker, 15 Ky. L. R., 125; Worland v. Secrest (106 Ky. 711 (21 R., 363) 51 S. W. 445; Blakistone v. Bank, 87 Md., 302 (39 Atl., 855); Daniel, Neg. Inst., sec. 517. But in all contracts the thing to be arrived at by the court in fixing the liability of the parties is the actual intention of the instrument. While we can not consider the parol negotiations between the parties previous to the execution of the written contract, in order to as-

certain its proper meaning, we may consider their situation and surroundings to arrive at the real intention of the instrument, where its terms are indefinite or uncertain. Bish. Cont., sec. 372. The proof shows that Prichard & Brubaker had to pay the landowners for the timber, the workmen for cutting it, the haulers for transporting it, and still another set of men for rafting and floating it to the mouth of the stream. This was all to be done in West Virginia, in the mountains, and these men were all to be paid promptly. To carry on this business, Prichard & Brubaker maintained several stores to furnish supplies to their men. To keep a stock in these stores, they had to maintain their credit with the merchants from whom they bought, and certain banks. Crane & Co., had nothing to do with the operations in West Virginia. The proof also shows that in contracts of this character there is heavy expense in getting out the first of the timber, on account of the construction of tramways, sluice dams, and the like, and that the profit on the contract is largely on the latter part of it. Prichard & Brubaker were men of high character. They were heavily involved when the contracts were made, and when the order was given, and could not carry out their contract unless maintained by Crane & Co. Appellees were well aware of the situation of the parties, and the way the business was done by Prichard & Brubaker. Mr. Brubaker, of the firm of Prichard & Brubaker, was the son-in-law of appellee, Ben Williamson, and the brother-in-law of appellee, W. J. Williamson. All the money which Crane & Co. advanced to Prichard & Brubaker was advanced on their positive assurances that it was absolutely necessary to enable them to get out the timber, and to pay certain charges which were then named. Crane & Co. were reluctant to furnish much of the money,

and only furnished it because they were made to believe that, unless it was furnished, suits would be brought in West Virginia, and a greater loss would fall upon them. The money which was furnished was not in all cases applied to the purposes for which it was obtained, but was placed in bank, to the credit of Prichard & Brubaker, and about $11,000 of it was paid out by them in small amounts, from time to time, on debts of Prichard & Brubaker to banks and other people. The money that was furnished after the order was accepted was paid, just as that had been which had been advanced before. In January, 1897, Prichard, who was the business man of the firm of Prichard & Brubaker, and stayed in the mountains, running the business, failed in health; and there was then at his bedside a meeting held, in which the managing agent of Crane & Co., was present, for the purpose of determining what should be done. At this meeting it was shown to Crane & Co., that Prichard & Brubaker, would fail and be unable to carry out their contract unless Crane & Co. carried them along. To prevent a greater loss, Crane & Co. made considerable advances then and for some time afterwards, which were not misapplied, but they finally refused to make other advances, and Prichard & Brubaker failed. When they failed a large quantity of the timber had not been gotten out, and the proof shows that if this timber had been gotten out, as it would, no doubt, have been, but for the sickness of Prichard, from which he never recovered, there would have been no trouble about the order to appellees.

Appellees rely on Risley v. Smith, 64 N. Y., 576; Blakistone v. Bank, 87 Md., 302 (39 Atl., 855); and Brice v. Bannister, 10 Eng. Ruling Cas., 411. These cases all involve orders for the unconditional payment of money. If Crane

& Co. had accepted the order originally drawn, these cases would be in point. That order was absolute and its acceptance would have made Crane & Co. responsible to appellees when logs were thereafter delivered sufficient to cover the order and the advances previously made. But Crane & Co. declined to accept that order, and this fact must be borne in mind in determining the effect of the change of phraseology in the order they accepted. In this order the money is directed to be paid "after deducting all moneys you have paid on said timber, and any money that you may have to advance in order to get same out and rafter ready for delivery, as per our contract with you." There is no controversy as to the right of Crane & Co. to deduct all money they had paid at the time the order was given. The case turns on the proper construction to be given the words, "any money that you may have to advance in order to get same out and rafted ready for delivery, as per our contract with you." These words show that the parties recognized the fact that it would be necessary for Crane & Co. to make advances to Prichard & Brubaker in order for them to deliver the timber according to their contract. They also show that the acceptance of the order was not intended to place Crane & Co. in such a situation as to deprive them of the benefit of their contract with Prichard & Brubaker, as would have been the case had the order disabled them from making further advances. The question to be determined is, therefore, what advances might Crane & Co. make without becoming responsible for the order in case enough money was not left in their hands to pay it? Were they limited to such advances as were in fact necessary, or by what criterion were they to be governed? In order for Crane & Co. to have known that the money required of

them was absolutely necessary to the getting out of the timber, it would have been essential for them to keep acquainted with the details of the business of Prichard & Brubaker. As this business was done in the forests of West Virginia, it could not reasonably have been anticipated that Crane & Co. should see to the appropriation of the money paid by them to Prichard & Brubaker, or that they should know before paying it that there was a real necessity for it; for this would have imposed a liability on Crane & Co. against which they would have no adequate means of protecting themselves without taking charge of the business of Prichard & Brubaker, and paying out the money themselves to the people in West Virginia. On the other hand, Crane & Co. were not at liberty to advance money to Prichard & Brubaker in disregard of the rights of appellees. They had accepted the order subject to such advances as were required to get out the timber pursuant to the contracts, and, in determining what advances should be made, it was incumbent on them to exercise such care and diligence as might be reasonably expected according to the usual course of business of an ordinary business man under like circumstances. They were not insurers, and the parties must have contemplated that Crane & Co. would continue to make advances thereafter just as they had done before the order was given. They had important interests of their own to preserve. These they were not required to sacrifice, but in protecting themselves they could not ignore the golden rule.

It is insisted for the appellants that under the order they are not responsible unless on a final settlement under the contracts there was enough left in their hands due Prichard & Brubaker to cover the order, and that, as the contracts were not carried out, there is no liability on

their part. In support of this contention, we are referred
to Gallery v. Prindle, 14 Barb., 186, Ferguson v. Davis, 65
Mich., 677 (32 N. W., 892) Crowell v. Plont, 53 Mo., 145,
and a number of other cases, such as Newhall v. Clark, 50
Am. Dec., 741 in which conditional orders were so con-
strued. But in all these cases the language of the order
was essentially different from that before us. Here the
words of the order at the outset repel this conclusion:
"Pay to the order of Ben Williamson & Co., out of the
first money due us." The timber was to be paid for as it
was delivered, and these words can not fairly be construed
to refer to a final settlement under the contracts. After
accepting the order, it was incumbent on appellants to
follow the usual course of business, and to make no other
advances than the circumstances apparently justified to
secure a carrying out of the contracts by Prichard &
Brubaker. Bradford v. Drew, 5 Metc., (Mass.) 188. It
must be borne in mind that by the order Crane & Co.
were authorized to deduct, before paying it, any money
they might have to advance in order to get the timber out
and rafted according to the contracts. They had the right,
therefore, to make such advances as were required of
them to enable Prichard & Brubaker to comply with their
contracts; and, to do this, they had to protect the timber
from seizure under legal process. In determining what
was necessary to protect themselves and the interest of ap-
pellees, Crane & Co. were required to exercise good busi-
ness prudence according to the usual course of business.
Such being the law, how stands the case? Crane & Co. had
no notice at any time that any of the money paid by them
was not being used to get the timber out. Nothing is
shown that would put them on notice of this. There were
several hundred men, in one way and another, to be paid in

West Virginia. The proof shows, without contradiction, that Crane & Co. were informed and solemnly assured every time the money was obtained that there were pressing bills that must be paid on the timber, or the contracts could not be carried out, and particulars were in each instance furnished. Prichard & Brubaker were men of position and character, whom they had always trusted, and the amount demanded or paid was not such as to raise suspicion. Prichard's deposition was taken before he died. In it he says that there was no misappropriation of the money. While about $11,000 of the money that was paid by Crane & Co., to Prichard & Brubaker, and placed by them in bank to their credit was checked out by them from time to time on other matters than the direct getting out of the timber, it would seem from the evidence that these payments were all necessary to keep Prichard & Brubaker from failing. If they had failed, the timber would have been attached in West Virginia, and they would have been unable to carry out their contracts. Crane & Co. were vitally interested in Prichard & Brubaker's carrying out their contracts, and, in determining what advances were necessary for this purpose, they were only required to use sound business discretion. The advances made by them were usual in the business, and such as the parties must reasonably have contemplated when the order was given. The fact that Prichard & Brubaker were so heavily in debt to them when the order was given, and continued in their debt in spite of all their efforts to get the account even, and that in the end a loss of over $2,000 fell upon them, is potent evidence of their good faith. Under all the proof, we are of opinion that, when Crane & Co. have lost already over $2,000 which they advanced on the timber, they ought not to be made to lose in addition the

amount of the order in contest; the loss having been brought about by the failure of Prichard & Brubaker after the money had been advanced, and notwithstanding the efforts of Crane & Co. to prevent it. We do not rest our judgment merely on the fact that, at the time each advance of money was made, Crane & Co. were assured it was necessary to meet a certain charge on the logs, but on the further facts that there was nothing to put Crane & Co. on notice that these assurances were untrue; that the advances were made according to the usual course of business, and within the reasonable expectation of the parties when the order was given; and that Crane & Co., notwithstanding their precautions, having failed to get back their advances, and having lost the benefit, to a large extent, of their contracts, would seem to have taken as good care of appellees as could be ordinarily expected of business men under the circumstances. Judgment reversed, with directions to dismiss the petition.

Petition of appellee for rehearing and modification of opinion overruled.

Dissenting opinion by Chief Justice Paynter:

I am of the opinion that the order designated the fund out of which Williamson & Co.'s debt was to be paid and in the judgment of law transferred it to them; that the conditions upon which the money was paid were performed, and that neither Crane & Co. or Prichard & Brubaker, or both, could deplete the fund by deducting from it unauthorized credits. By the acceptance of the order Crane & Co. agreed to pay Williamson & Co. $5,731.39 out of the first money due Prichard & Brubaker under a certain timber contract which the acceptor had with them,

after deducting all moneys which had been paid on the timber and any moneys that it may "have to advance" in order to get same out and rafted ready for delivering as per its contract with Prichard & Brubaker.

It was proven and substantially admitted on the argument, that Crane & Co. after accepting the order, paid Prichard & Brubaker about $11,000 at their instance, and without investigation by it as to the necessity for so doing, and that that was not used in carrying out the timber contract. The result of the settlement under the timber contract demonstrated that if the $11,000 had been used in carrying it out, instead of Prichard & Brubaker being in debt to Crane & Co. about $2,000 on settlement, it would have been in debt to them in the sum of $9,000 in round numbers. Had this been the result, enough of it would have been completely appropriated by the acceptance of the order to pay Williamson & Co.'s debt. As these figures demonstrate that it did not have to pay the $9,000 on the timber contract, should it be permitted to defeat the appropriation of enough of that sum to pay the order which it accepted for that purpose, upon the ground that the drawers of the order represented it was necessary that they should receive that amount to carry out the timber contract and it in good faith believed them? If it was in the contemplation of the parties that Prichard & Brubaker retain the right to determine, whether or not anything would be due them on final settlement, the drawing and accepting of the order was an idle thing. The very fact that Williamson & Co. demanded the order shows that they were not willing to trust them to receive from Crane & Co. the money which would become due under the timber contract, so they sought by the order to ap-

propriate enough of it to the payment of their debt. If, notwithstanding the appropriation to Williamson & Co., the right to receive it remained with Prichard & Brubaker, then they had entered into a meaningless transaction, except that Williamson & Co, extended the time for the payment of the money due them and lessened their chance for collecting it. Crane & Co. were not compelled to accept the order, but having done so, I am impressed with the idea that it imposed an obligation which it could not disregard, nor was it the right of Pritchard & Brubaker to release them from it.

It appropriates the first money due on the timber contract. It specified the credits which Crane & Co. reserved the right to deduct from the proceeds of the timber, to wit, the money it had paid on the timber and such as it would "have to advance in order to get same out and ready for delivery." The language is a restriction on the right of Crane & Co. to receive credits on proceeds of timber. This being true it imposed the duty upon it, to see that no money was paid Prichard & Brubaker except such as it had to pay for the purpose specified or to lose such sums as it paid them which were not needed or used for that purpose. This is not answered by saying that the contract between it and Prichard & Brubaker required the expenditure of large sums of money payable to many persons to get the timber rafted and ready for delivery, therefore it was not required to use any diligence to see it properly applied. That such was not in contemplation of the parties is manifest from the terms of the order. There is no ambiguity in it, but an express agreement to pay Williamson & Co. a fixed amount out of a certain fund after deducting specified expenses. The court should not destroy the rights of the payees because the terms of the

order imposed a duty upon the acceptors as well as an obligation to pay the amount in question. The fact that Crane & Co. miscalculated the effect of its carelessness in paying money to Prichard & Brubaker solely on their representations, and which was not necessary to prepare the timber for delivery should not be held as a satisfaction of its obligation to Williamson & Co. It is complained that if Crane & Co. has this debt to pay it would impose a great hardship upon it. A sufficient answer is that it voluntarily imposed it by accepting the order. It might also be added that the hardship would not have resulted if care had been observed to keep its obligation by preserving the fund out of which the debt was to be paid.

Judge White concurs.