NATIONAL SURETY COMPANY v. COATES.

Opinion delivered February 22, 1909.

JUDGMENTS—RES JUDICATA.—Where a surety company, sued upon a bond executed by it to secure the performance of a contract, set up in defense (a) that the bond was procured by fraud, and (b) that the alleged contract had been rescinded by consent, and a general verdict was rendered in its favor, upon which judgment was entered, such judgment was a bar to the subsequent suit to recover damages alleged thereafter to have accrued under such bond.

Appeal from Pulaski Circuit Court; *Robert J. Lea,* Judge; reversed and dismissed.

*Wiley & Clayton,* for appellant.

1. The appellant's plea of *res judicata* should have been sustained because the cause of action set up in the present case is identical with that set up in the former case. Phillips on Code Pleading, § 30; 94 U. S. 351, 352. A plaintiff cannot maintain separate causes of action for breach of an entire and indivisible

contract by merely claiming damages for a different period of time. 63 Ark. 259; 51 Vt. 38; 16 N. Y. 548; 15 Johns (N. Y.) 432; 62 How. Pr. (N. Y.) 343; 58 Ark. 617; 31 Barb. 381; 44 O. St. 226; 14 Mo. App. 486; 33 Mo. 212; 71 Md. 385; 78 Md. 132; 63 Tenn. 78; 24 Neb. 709; 19 Abb. (N. C.) 269; 14 Abb. Pr., N. S. 145; 46 N. Y. Super. 205; 78 Ind. 422; 23 Cyc. 446; 32 S. W. (Ky.) 614, 615; 44 Minn. 460; 17 O. St. 471; 6 Hill (N. Y.) 54; 39 Ark. 280.

2. The questions upon which recovery in this action depends have, under identical circumstances and conditions, been previously concluded by a judgment between the parties. If either of the defenses set up on the first trial was sustained by the jury, it went to the heart of the contract, and plaintiff could have no further right to sue. The judgment in that case concluded both parties on every issue that was, or might have been, made. 83 Ark. 545; 79 Ark. 193, 194; 77 Ark. 379; 76 Ark. 424.

*Vaughan & Vaughan,* for appellee.

There were six distinct grounds of defense set up by the appellant in the former action, and a general verdict returned by the jury. No special verdict was asked for nor returned. There is no means of telling upon what ground or grounds that verdict was based. The first suit would not operate as an estoppel unless in the subsequent action between the same parties "the precise question was *raised* and *determined* in the following suit." If the verdict might have proceeded upon only one point, where several were in issue, the decision of which were not absolutely necessary to the result, or if there is any uncertainty on this head, then the whole question is at large and open to a new contention. 94 U. S. 608; 23 Cyc. 1155-7; *Id.* 1310, d.; *Id.* 1161, 55 Ark. 18; 84 Fed. 103; 138 Ill. 77; 63 Minn. 373; 67 N. H. 320; 66 Ark. 336; 18 Ark. 85. Identity of subject-matter is not a sufficient test. The *causes of action* in the two suits must be the same; otherwise the first action is not a bar to the second. 23 Cyc. 1165-6; *Id.* 1189; 23 Ark. 131; 23 Cyc. 1126, § 5. It is not the identity of the thing sued for, or of the causes of action, which determines the conclusiveness of a former judgment, but the identity of the issues involved in the two suits. 24 Enc. Law, 2d Ed. 780 d; 101 S. W. 696, 701; 63 Ark. 264-5; 107 N. W. 253; 7 Cur. Law, 1769 and cases cited; 5 *Id.* 1516, and cases cited; 9 Enc. Pl. & pr. 611; 24

Am. & Eng. Enc. of L., 2d Ed., 774-5, notes 1 and 2; *Id.* 777; Herman on Estoppel, 79; 2 Black on Judgments, 726; 62 Ark. 78; 24 S. W. 265. The test of the identity of causes of action is whether the same evidence will sustain both. 5 Cur. Law, 1510, 1516 and notes 24, 36, 76-7; 23 Cyc. 1158; 104 N. W. 763. Successive actions may be maintained on continuing contracts, such as the bond in this case. Kirby's Dig. § 6291; 24 Am. & Eng. Enc. of L., 2d Ed., 790, 791, n. 3; *Id.* 773; 137 U. S. 568; Wells, Res Judicata & Stare Decisis, 208-11; 1 Am. & Eng. Enc. of L. 151; 23 Cyc. 1175-6; 39 Am. Rep. 663; 49 Am. Dec. 369. The fact that appellee was in the first suit required to separate his two claims for damages, and the court's instructions to the jury expressly excluded from consideration damages that might accrue after the date of that suit, brings this case within the exceptions to the rule against "splitting up of causes of action." 94 U. S. 477; 24 L. Ed., 276; 23 Cyc. 1173.

HART, J. The present suit was commenced on the 23d day of April, 1906, by James Coates to recover for a breach of a condition of a bond executed in his favor by the National Surety Company as surety for one Bishop. The Surety Company answered, and later amended its answer by interposing a plea of *res judicata,* to which a demurrer was sustained. This court held that the judgment sustaining the demurrer was erroneous and remanded the cause for a new trial. The opinion is reported in 83 Ark. 545, in which it was held that "according to the allegations of this amendment (referring to the answer as amended) the question of defendant's liability on the contract of suretyship sued on was determined in the former action adversely to the plaintiff's contention in this case, and therefore barred a recovery."

On the new trial in the circuit court, the only defense offered was a plea of *res judicata.* The evidence relied upon to sustain it is the record of a former suit between the same parties, which shows the following state of facts:

On the 4th day of April, 1902, James Coates and J. W. Bishop entered into a written contract whereby the latter obligated himself for the period of four years from and after July 1, 1902, to furnish the teams and messengers to perform the screen wagon mail service on a certain route in the city of Little

Rock for the consideration of $158.33 per month. The National Surety Company became his surety in the sum of one thousand dollars for the faithful performance of the contract.

On March 24, 1903, Coates brought suit in the Pulaski Circuit Court against Bishop and the National Surety Company on their contract and bond, alleging their failure to perform said contract since October 1, 1902, and that he was compelled thereby to hire other men and horses, etc., to perform the same, and to pay them therefor $183.33.

The answer of the defendant Bishop was filed on April 14, 1903, and is in words and figures following, to-wit:

"For answer to the complaint the defendant, Joseph W. Bishop, admits the execution of the contract of April 4, 1902, but he says that he was induced to make said contract by certain false and fraudulent representations made by the plaintiff and his agent, who represented and stated to the defendant that it would be necessary to make only eighteen trips per day, and that three horses would be all that would be necessary to do the work, when in fact the number of trips on this route was twenty-four, and it was essential to have six horses to do the work, and this defendant contracted to make eighteen trips per day.

"The defendant Bishop lived about twenty miles in the country, and had little knowledge of the work, and, on the contrary, the plaintiff and his agent, one Catching, were perfectly familiar with the routes and what was required in the way of horses and the number of trips, and the plaintiff and his agent, in making the statements above mentioned, knew that these statements were false, whereas the defendant Bishop relied upon them to state to him the facts, and they knew that the defendant Bishop relied upon them as to these facts.

"The defendant Bishop, supposing that only three horses would be needed to do the work, and that there were not more than eighteen trips, made his bid and entered into the contract sued on with reference to the expenses and labor which this would entail in making eighteen trips per day, and the compensation which the contract sued on specified was not enough to pay the expenses and leave him any renumeration for his labor and services, and if the defendant Bishop had known the facts and the number of horses it would require, and the number of

trips to be made, he would not have entered into the contract, and the plaintiff further knew this when the contract was made.

"For a further defense, this defendant, reiterating all the allegations in the foregoing paragraph, says that after the contract had been made and its excution entered into, to-wit, on or about the ...... day of September, 1902, this defendant, having learned by actual experience that the statements made to him, and which induced him to enter into the contract, were false, made complaint to the plaintiff and his agent, and it was then and there agreed between this defendant and the plaintiff that, instead of $158.00 per month, the plaintiff should pay the defendant $166.66 per month, and that this amount should be taken as the true amount from the first day the work was undertaken, to-wit, on the 1st day of July, 1902, and under this agreement this defendant proceeded to carry out the contract and to perform the work and furnish the teams required, and the plaintiff paid him the sum of $166.66 for each month from the 1st day of July, 1902.

"And afterwards, to-wit, the ...... day of October, 1902, it was further agreed by and between the plaintiff and this defendant that the amount of $166.66 was not enough to pay for the services required at the hands of this defendant under said contract, and, as extra trips had been added, the plaintiff and this defendant then and there rescinded the contract sued on, and the plaintiff then and there agreed with this defendant that, if the defendant would do the work required, he would pay the defendant the sum of $183.00 per month, and it was further agreed between the plaintiff and this defendant that one Peters should become a partner of this defendant, and that thereafter the work should be done by this defendant and Peters as partners, and that each of them should furnish the same number of horses and perform the same amount of services, and that the compensation should be divided equally between them, and from that time on they, as partners, performed the services for the plaintiff, and the plaintiff paid them $183.00 per month, and they continued to carry the mails and carry out the contract until on or about December 26, 1902, at which time it was mutually agreed by and between the plaintiff and this defendant and Peters that the contract which had been existing between

the plaintiff and this defendant and Peters up to that time should be rescinded, and that the partnership between this defendant and Peters should be dissolved, and that Coates should make a new contract with Peters and one Gray, which he did then and there make, and by which contract Peters and Gray agreed that they would carry the mail and perform all the work that this defendant had originally undertaken to do, and that plaintiff should pay Peters and Gray the sum of $183.00 per month, and this defendant should thereby and thereafter be released from any further obligation to carry the mail, and from any and all liability under said contract.

"And the said Peters and Gray, in pursuance of this contract so made on December 26, proceeded on January 1, 1903, to carry the mails on said route No. 447,002, and they have ever since continued to do so, and therefore this defendant says that he is not liable to the plaintiff in any sum whatever.

"The defendant denies that he broke his contract with the plaintiff on October 1, 1902, or at any other time, but states that the changes made in the said contract were made by mutual agreement of all parties concerned. He denies that plaintiff, by reason of neglect of duty of the defendant or his drivers and messengers, was ever compelled to hire other drivers and messengers and pay them an advance in salary to what he, Bishop, was then receiving, but states that he, Bishop, kept sufficient drivers and messengers to do the work required of him.

"Wherefore he asks to be dismissed, with the reasonable costs in his behalf expended.

And on April 15, 1903, the defendant Surety Company filed its answer to the complaint in that suit, its answer being in words and figures following:

"Comes the defendant, National Surety Company, and for separate answer to the complaint says that they adopt the answer of the defendant Bishop, and make all the denials and allegations thereof a part and parcel of this answer as if set out at length herein, and they further say that they were not consulted with reference to, or notified of the changes made in the contract on September ...., 1902, or that made in October, 1902, and that, by reason of this change in the contract and want of notice to them, this defendant was released from any further liability on this bond.

"For a further defense .this defendant says that on December 26, 1902, the defendant Bishop, by agreement with the plaintiff, rescinded the contract which had been made with defendant Bishop, and it was expressly agreed by and between the plaintiff, the defendant Bishop and this defendant, that Bishop should be and he was released from all further obligation, and that this defendant should no longer be liable on this bond for any amount whatever, and therefore this defendant says that its obligation on the bond sued on was discharged and released by mutual agreement of all parties."

The issues thus raised by the pleadings were tried before a jury, who, after hearing the evidence and the instructions of the court, returned a general verdict in favor of the defendants. Judgment was entered accordingly on the 24th day of March, 1904.

J. W. Bishop for the defendant testified as follows: "I was present at the first trial, and testified that there were changes made in the contract, and that I complained to James Coates that I was not getting enough; that he made the change and gave me a little more money. I introduced three or four witnesses on the same subject. I also testified to giving up the contract."

Thereupon the plaintiff introduced the following evidence:

James Coates: "I was plaintiff in the first suit, and am plaintiff in this suit. I testified in regard to my claim that Bishop took a contract to carry the mail from April 1, 1902, to April, 1906, and about the middle of September, 1902, he gave me notice that he would quit the service at the end of that month, and on the 20th of that month I notified the Surety Company. The 1st of October, 1902, he told me he had quit, and went home and never returned to the work, and I was compelled to keep the mails going, and I employed others to complete the work.

"Q. For what damage did you sue in that case?

"A. For the damages I had sustained from July 1, 1902, to April 1, 1904, the date of the judgment. I testified I was damaged in the sum of $1,000 between those dates. There was no fraud in the making of the contract.

"Q. Why did you bring the present suit?

"A. To recover damages that accrued from April 1, 1904,

to July 1, 1906. The first complaint I remember his making about wanting an increase of compensation was in August, 1902."

On this evidence the court, sitting as a jury, found in favor of the plaintiff for $1,000, and rendered judgment in his favor against the defendant for that amount.

The defendant properly saved its exceptions, and has duly prosecuted an appeal to this court.

There is but one question in the appeal, and that is, should the plea of *res judicata* have been sustained?

Counsel for Coates urge that one of the defenses to the first suit was a denial that Coates was damaged, and that, the verdict being general and not special, the jury might have believed that the evidence of damage to the plaintiff was not sufficient to warrant a finding in his behalf.

To sustain this contention, they point to the paragraph of the answer, which is as follows:

"The defendant denies that he broke his contract with the plaintiff on October 1, 1902, or at any other time, but states that the changes made in the said contract were made by mutual agreement of all parties concerned. He denies that plaintiff, by reason of neglect of duty of the defendant or his drivers and messengers, was ever compelled to hire other drivers and messengers and pay them an advance in salary to what he, Bishop, was then receiving, but states that he, Bishop, kept sufficient drivers and messengers to do the work required of him."

In the first paragraph of the answer, the defendants claim that they were induced to enter into the contract by certain false and fraudulent representations on the part of the plaintiff. In the next paragraph, they plead an alteration of the contract in September, 1902, and then that it was rescinded in December, 1902. Then follows the clause relied upon by counsel for Coates.

True, in the last paragraph, they deny that Bishop broke the contract, but in the same sentence this is qualified by the averment that changes were made in the contract by mutual consent, and immediately follows the denial that Coates by reason of their neglect of duty was compelled to hire other drivers, etc., thus showing that they did not mean to deny that they had not

complied with the contract as originally executed, and that Coates did not suffer any damage, but they were only intending to justify their non-perforamnce of it on the ground that it had been changed by mutual consent. This denial must be read in connection with the rest of the answer, and the answer construed as a whole; and, when so read and construed, it is manifest that the answer does not deny that, if' there was a breach of the contract, as alleged by Coates, he did not suffer any damages, and for this reason should not recover.

An alleged breach of the original contract was the foundation of the first suit as well as of the present action. The defendants admitted their failure to perform the contract and sought to justify their action in this respect by an averment that Coates, recognizing the inadequacy of Bishop's compensation for his services, agreed to and did pay Bishop $166.66 per month. That later on this amount was raised to $183.33. That, still later, other parties were substituted in the place of Bishop, and were paid $183.33 per month for their services, and that thereafter Bishop was released from any further obligations under the contract.

Thus it will be seen that the particular matter in issue was whether or not there had been a breach of the contract; and the verdict in the suit could not have been rendered without deciding this question. If the jury had determined that issue in favor of Coates, it necessarily follows that some damage must have resulted, and they would have found in his favor; for the averments of the answer would have been express and explicit admissions of the amount of damages he had suffered. But the verdict was for the defendants. Judgment was entered upon it, and no appeal was taken. Therefore the jury actually and necessarily found that there was no breach of the contract, and that their verdict could not have been based upon a finding that there was a breach of the contract, but that no damage had been suffered by Coates. In the opinion in this case on the former appeal, the court held that, according to the allegations of the amendment to the answer, the question of the defendant's liability on the contract of suretyship sued on was determined adversely to the contention of Coates in this case; and, having determined that the allegations have been established by the

undisputed evidence, we must conclude that the judgment in that case is bar to the present suit.

Judgment reversed and cause dismissed.